## SHELDON CANAL COMPANY ET AL. v. F. MILLER ET. AL.

### Decided November 3, 1905.

**1.—Corporations—Subscription to Stock—Abrogation.**

Where a party had subscribed for $28,000 of stock in a corporation, but at a meeting of the stockholders subsequently held, all being present, it was determined that the subscriber should be allowed to take only $12,000 worth of stock, such action abrogated the subscription for the larger sum.

**2.—Same—Stockholders' Meeting—Regularity.**

The fact that the meeting was not regular would not affect the validity of its action and agreement in allotting the stock where all the stockholders were present and concurred therein.

**3.—Evidence—Secondary—Refusal to Produce Letters.**

Parol evidence was admissible to show a contract of employment which was effected by letters between witness and one of the defendants where plaintiff introduced the letters from defendant to the witness, and notified defendants during the trial to produce the letters from witness to defendant, and defendants had ample time to produce the letters and did not do so nor claim that they were unable to produce them.

**4.—Same—Harmless Error.**

The admission of certain testimony held, if erroneous, to be immaterial and harmless in view of the fact that one of the defendants testified to substantially the same facts.

**5.—Same—Recital in Check.**

A recital on the face of a check drawn by a third person and payable to E., that it was given for payment of John Barr's note, does not of itself suffice to charge Barr with the amount of the check.

**6.—Checks by Officer of Corporation.**

Checks signed by an individual as drawer must in the absence of evidence to the contrary be regarded as representing transactions between the drawer

and drawee individually, although drawer is the secretary and treasurer of a corporation.

Appeal from the District Court of Harris.  Tried below before Hon. Norman J. Kittrell.

*L. B. Moody,* for appellants.

*Hogg, Watkins & Jones* and *Hamblen, Scott & Hamblen,* for appellees.

REESE, ASSOCIATE JUSTICE.—E. Miller and John Barr sued the Sheldon Canal Company, C. W. Hahl and H. P. Mansfield, to recover the amount of a certain promissory note for $5,100, made by the said Sheldon Canal Company and endorsed by plaintiffs, and Robert J. Barr and H P. Mansfield, which, it was alleged, upon failure of the canal company to pay at maturity, had been paid by plaintiffs as endorsers, whereby the said canal company became liable to them for the full amount of the note and interest, and Mansfield became liable for one-third thereof as one of the endorsers.

Plaintiffs sued in addition to recover certain sums alleged to be due them severally on open account, and certain sums alleged to be due to D. C. Barr and R. J. Barr which accounts had been transferred by them to plaintiff John Barr.  It was alleged that, by contract with Jonathan Lane, C. W. Hahl had bought from Lane all of the stock of the Sheldon Canal Company, one of the conditions of the contract being that Hahl assumed and agreed to pay all of the indebtedness of the canal company, which contract of Hahl was endorsed by Mansfield, whereby Hahl and Mansfield became liable to pay plaintiffs' debt here sued on.

The canal company answered by general demurrer and general denial and pleaded specially, admitting the payment of the $5,100 by plaintiffs for defendant, but alleging that plaintiffs were indebted to defendant in excess of said amount, for cash advanced to them by defendant, the amount due by each of the plaintiffs being specifically set out, and being in excess of the amount claimed by plaintiffs.

Defendant further alleged that plaintiff Miller became a subscriber for 320 shares of the capital stock of the canal company, of the par value of $32,000, of which subscription he had paid for, and there had been issued to him, 82 shares, leaving 238 shares, amounting to $23,800, for which Miller was still indebted to the canal company. That Miller had been notified by the board of directors to pay said amount and receive the shares of stock, which are in the answer tendered to him.  Said sums are pleaded in offset and reconvention to plaintiffs' demands.

C. W. Hahl answered by general demurrer, general denial and denied specially that there was any privity of contract between plaintiffs and himself.  H. P. Mansfield answered by general demurrer and general denial.

By supplemental petition plaintiffs pleaded the statute of limitation of two years in bar of the claim of the canal company, pleaded in

set off and reconvention, and, with reference to the alleged subscription to 320 shares of the stock of the company, plaintiff Miller denied that he had subscribed for 320 shares, but alleged that he had subscribed for 130 shares, which he had paid for and was entitled to receive. He denied that any subscription had been made by him in writing, and pleaded the statute of limitation of two years in bar of defendant's claim for such subscription, if any had ever been made, which is denied.

On this point Miller further alleged that about July or August, 1903, there was a meeting of the stockholders of the canal company for the purpose of determining how much stock should be issued to each stockholder, and after considering all the subscriptions and payments made by the several stockholders it was agreed upon by each and every one of the stockholders, and by each and every one of the directors, that no more stock should be issued to any person whomsoever than had theretofore been issued or agreed to be issued; in which meeting it was agreed that E. Miller should have $13,000 and no more.

The case was tried before a jury, and there was verdict and judgment against the Sheldon Canal Company in favor of E. Miller for $3,800 on the note of $5,100, with interest at 6 percent from October 7, 1903, also for $557.10 on open account; in favor of John Barr for $1,300 on note for $5,100, with interest at 6 percent from October 7, 1903, also for $488.44 on assigned account of D. C. Barr, and for $330.20 on assigned account of R. J. Barr. Also in favor of Miller and John Barr against H. P. Mansfield for one-fourth of the $5,100 note ($1,275) and for Mansfield against the Sheldon Canal Company for a like amount. It was also adjudged that the defendant canal company take nothing on its plea of setoff and reconvention.

Afterwards E. Miller remitted $50.74 of his judgment, and John Barr remitted $125, making Miller's judgment on open account $506.36, and Barr's judgment on open account $693.64, which was made the judgment of the court. Motion for new trial by defendants having been overruled, they appeal.

If there was error in the charge of the court, as complained of in the first assignment of error, in instructing the jury that if the $5,100 note or any part thereof was due the Sheldon Canal Company it should be deducted from the recoveries in favor of plaintiff, it was in favor of appellants. This issue does not seem to have been raised by appellants' answers, although evidence was introduced upon it. The error certainly could not have injured appellants.

The execution of this note by the maker and endorsers, and its payment by Miller and Barr as alleged, are shown by the undisputed evidence, and there was no error in instructing the jury to find for the plaintiffs for the respective amounts thereof paid by them, with 6 percent interest from the date of such payment.

It was immaterial that the note was described in the statement furnished Lane as being due January 1, 1905. Nobody was misled by this.

The charge of the court objected to in the second assignment of error is not contradictory. The Sternenberg statement might be admit-

ted to be correct, and still there might be an issue as to what items were embraced in it. The statement did not purport to be other than a general summary.

We confess that we can not find in the record any evidence from which to fix November 19 as the exact date up to which defendants claimed that all items of indebtedness and matters of difference between plaintiffs and the canal company had been considered by Sternenberg, the statement being dated simply "November, 1902," but it does not appear that, in any view of the evidence, this could have resulted in any harm to appellants. Doubtless the particular date was suggested by something not shown in the record. It does not appear that this error could have been material, if it was error.

In the third assignment of error appellant complains that the charge to find in favor of plaintiffs for such amounts as they find to be due, is inconsistent with the instruction given in another part of the charge, that if the items were not included in the statement furnished to Jonathan Lane, to find for defendants. It was not intended that the jury should look to any isolated section of the charge for the law to govern them. Taking the whole charge, the objection of inconsistency is not sustained.

In the instruction referred to in the fourth assignment of error, in speaking of the list of indebtedness of the Sheldon Canal Company furnished to Lane, upon the faith of which he purchased the stock of the company, the court evidently meant, and the jury must have understood the court to have meant, the statement made to Lane as to such indebtedness. There was evidence tending to show that Mr. Lane was told by Miller and Barr, in connection with the list shown him, that there were other debts not shown in the list. There was no error in this portion of the charge.

The jury was instructed as follows: "There is no sufficient evidence that E. Miller undertook to buy or subscribe for $32,000 worth of stock of the company, which defendants plead as an offset against him, and you will not consider that question." This is assigned as error. This item had been specially pleaded in offset by appellants, and if there was any evidence from which the jury would have been entitled to find in favor of the appellant upon this issue, the sufficiency of such evidence was a matter for their determination. Mansfield testified positively that Miller had subscribed for $28,000 or $32,000 worth of the stock. Miller testified with equal positiveness that he had not done so, and in this he was supported by the testimony of Robert J. Barr. It appears from Mansfield's testimony, which affords the only evidence of this subscription by Miller, that in the organization, and preliminary thereto, John Barr agreed to take $10,000 worth of stock, Robert Barr agreed to take $5,000 worth, that he (Mansfield) subscribed for $5,000 worth, and Miller subscribed for $32,000 or $28,000, the par value being $100 a share. Miller testified "the other stockholders and myself talked over the $28,000 worth of stock, that is David Barr, John Barr, Mansfield and myself, but none of them said that I could have it. I told them that I would take at least $28,000 worth of stock if they would give it to me, but they never said I should have it. If I could have gotten it in time, I had a chance to dispose of my property in Louisiana which

would have enabled me to pay for every dollar of that stock. They did not say I could or could not have that stock, and I had the money there to pay for it, that is, I had property ready to sell. This was just previous to this meeting in 1902." There was testimony that Mansfield objected to letting Miller have all the stock he wanted, as it would give him control of the company.

There was a meeting of the stockholders in 1902, at which all of the stockholders were present. Both Miller and John Barr testify that at this meeting it was determined that Miller should have $12,000 worth of stock. Both of these witnesses testify that this was not intended as the amount to be issued to him as paid for, but as the amount he would be allowed to take, and that he could not have gotten more by paying for it. They both testify clearly and positively on this point, and that this conclusion was concurred in by all of the stockholders at the meeting referred to, each of them expressing himself as satisfied. It appears that the proceedings of this meeting were never entered upon the minutes. Mansfield, who was secretary, testified that he did not write up these proceedings because, and for the reason, that the meeting was not regular. This would not at all matter if all of the stockholders were present and concurred in the agreement as to the allotment of stock.

The testimony as to this meeting, that all of the stockholders were present, that it was, with the consent and by the agreement of all of them, determined that Miller was to have $12,000 of stock, and that this was to be a limitation of the amount of stock he was to be allowed to take, and not of the amount to be issued to him as paid for, is not contradicted by Mansfield nor by any other testimony in the case. So that taking Mansfield's testimony to be true, that at the organization or preliminary thereto Miller subscribed for $28,000 or $32,000 of stock, or agreed to take that much, this subscription or agreement was abrogated by the agreement of the stockholders at the meeting referred to, all of them concurring, that Miller should only have $12,000 worth. The evidence as to this agreement is uncontradicted, and it is not necessarily inconsistent with Mansfield's testimony as to Miller's having subscribed for $32,000 worth of stock originally.

As corroborating this view it appears that in the contract for the sale by the Barrs and Miller to Jonathan Lane of the stock of the Sheldon Canal Company, it is stated that the corporation is capitalized for the sum of $100,000, divided into 1,000 shares of $100 par value each, that only 305 shares have been issued, that 48 other shares have been subscribed for and paid for by E. Miller, but which have never been issued, and that the remaining 647 shares provided for, have never been subscribed for, or issued, but remain in the hands of the treasurer unissued, as treasury stock. When Hahl bought from Lane this written contract between the Barrs and Miller and Lane was attached to his contract with Lane, and so made a part of it, and Lane testifies that Mansfield was interested with Hahl in this purchase. This evidence is uncontradicted, in fact it was introduced by defendants.

The Sternenberg statement, to which all of the parties agree as correct as far as it goes, differing only as to whether certain items of account were taken into consideration in making the statement, makes no reference to any indebtedness of Miller to the company on account of sub-

scriptions for stock, nor do the books of the company contain any evidence of such subscription. The day-book, introduced in evidence by plaintiffs, has this entry in connection with Miller's stock account: "It being understood that the total amount of Mr. Miller's stock should be $13,000." It must be stated, however, that Mansfield denied the authenticity of the entries in the day-book generally.

It further appears that this claim of Miller's indebtedness to the company upon unpaid subscription for stock, was not made until some months after the suit was filed, and after the sale to Lane, and by Lane to Hahl; that the original answer of defendants did not refer to it, but it was set up for the first time in an amended answer filed three or four months after the suit was instituted.

All of this evidence, except the entry in the day-book, is undisputed and must be assumed to be true, and it leads to the inevitable conclusion that, even if Mansfield's statement be true as to Miller's original subscription for $28,000 or $32,000 worth of stock, such subscription was nullified and abrogated by the subsequent action of the stockholders, all of then participating therein. There is no room for ordinary minds to differ as to the conclusion to be drawn from this testimony. Joske v. Irvine, 91 Texas, 574. It certainly does not "create more than a mere surmise or suspicion" that the canal company had a claim upon Miller for unpaid subscription for stock. We do not think it does that much.

The trial court should have instructed the jury that there was no evidence upon which Miller could be charged for this unpaid subscription. It was not error of which defendants can complain, that they were instructed that there was no sufficient evidence that Miller undertook to buy or subscribe for $32,000 worth of stock of the company.

There was no error in refusing to strike out that portion of R. J. Barr's testimony to the effect that he had been employed for a year, on the ground that the contract appeared to have been made by written correspondence between Barr and Mansfield. The letters from Mansfield to Barr were introduced by plaintiff, and defendants had ample time and opportunity, after having been notified during the trial to do so, to produce those from Barr to Mansfield, who had himself, in fact, previously, and during the trial, been notified to produce the same. Defendants did not claim, so far as the record shows, that they were unable, upon such short notice, to produce the letters. It appears from the bill of exceptions that plaintiff offered to strike out this testimony if defendants would produce Barr's letters to Mansfield with regard to this matter. They were not produced, nor was it claimed that defendants, including Mansfield, could not then produce them.

In the state of the evidence there was no error in excluding the evidence as to the notice to Miller, after the institution of the suit and after the sales to Lane and Hahl, to pay for the $32,000 worth of stock alleged to have been subscribed for by him, nor in permitting the witness Sternenberg to testify that none of the items claimed by Miller were taken into consideration in making up his statement, defendant objecting that the written statement was the best evidence. The testimony was not as to what items were contained in the statement, as stated in appellants' proposition, but as to what items were considered in making

up the statement, an entirely different matter and one which was not shown by the statement itself.

If there was any error in allowing R. J. Barr to testify that, upon the faith· of having the position of general manager for the company, he had given up a good position and gone to the expense òf moving his family to Houston, it was immaterial and harmless in view of the fact that Mansfield, for appellants, testified to substantially the same facts.

The verdict and judgment are fully supported by the evidence, and there was no error in refusing appellants' motion for a new trial. There being no errors in the record, the judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

Upon hearing of this cause the judgment of the trial court was affirmed. In their assignments of error appellants complain of the action of the trial court in overruling their motion for new trial, on the ground that the verdict and judgment are not supported by the evidence.

In affirming the judgment it is stated in the opinion that the verdict and judgment are fully supported by the evidence. In their motion for rehearing appellants, among other grounds, complain of this conclusion, and refer to the statement under the eleventh and twelfth assignments of error in support of their contention. In its answer the Sheldon Canal Company alleged that John Barr was indebted to the company for cash advanced to him in a large amount, which is pleaded in offset to his claim, the answer containing an itemized statement showing the dates and amounts of such advances in cash, alleged to have been made. None of the evidence referred to in the statement in appellants' brief, to .the eleventh and twelfth assignments of error, establishes the account pleaded by appellant in offset against John Barr, or any item thereof. If this evidence can be said to establish any indebtedness of John Barr to the Sheldon Canal Company, it is not the particular indebtedness set out in the answer of the company. The check referred to in this statement for $800, dated December 18, 1902, is payable to Thomas Evans and signed "Mansfield." The recitation upon the face of the check, that it was given for payment of John Barr's note, would not of itself charge John Barr with the amount of ˙the check, and there is no evidence that would do so. Another check referred to, for $300 April 1, 1903, is not payable to John Barr as stated, but to Thomas Evans. On the face of the check appears the notation "John Barr note." This would not charge John Barr with the amount of the check, but Mansfield testified, presumably with reference to this check, that he (Mansfield) got the cash and had it credited on a note of John Barr to Thomas Evans. This check, however, is also signed "P. Mansfield." Another check for $25, January 27, 1903, is payable to John Barr and signed "Mansfield."

These checks in dates and amounts correspond with items in the setoff pleaded by the Sheldon Canal Company, but· there is nothing in the evidence that in any way connects the Sheldon Canal Company with the checks, or that tends to show that they represent cash advanced

to John Barr by the company. The gap between the canal company and the checks can not be bridged over by any inference which can be drawn from the fact that Mansfield was the secretary and treasurer of the company. In the entire absence of any evidence tending to establish any other conclusion, the checks must be taken to represent transactions between John Barr and Mansfield individually.

The itemized account, introduced in evidence by plaintiff, from the ledger of the Sheldon Canal Company, showing a balance of indebtedness against John Barr, likewise does not tend to establish the items of "cash advanced" by the canal company to John Barr, as set out in its answer. None of these items in the account correspond either in date or amount with those pleaded in offset, except the items November, 1902, $200, which might be referred to two items in the offset account of $100 each in November, 1902, but this item of $200 appears by the account itself in which it is shown to have been liquidated. The testimony, even if uncontradicted, does not establish any item of the account of the Sheldon Canal Company against John Barr pleaded in offset.

The motion for rehearing is overruled.

*Overruled.*

Writ of error refused.