Missouri, Kansas & Texas Railway Company of Texas v. S. M. Kennedy.

Decided June 24, 1908.

**1.—Charge—Affirmative Presentation of Defense.**

While it is true that a party to an action has the right to have the defense relied upon by him distinctly and affirmatively presented by the charge to the jury, the refusal to give a requested charge so presenting the matter is not reversible error when the court in its main charge has already presented the matter as fully, distinctly and favorably as the party is entitled to.

**2.—Contributory Negligence—Alighting from Moving Train—Custom—Acquiescence.**

The plaintiff, a freight conductor of the defendant railroad, attempted to alight from a fast moving train as it passed a station, for the purpose of registering the train, and was injured; the plaintiff, over defendant's objection, proved that it was a custom of defendant's conductors to alight in the same manner at said station for the purpose of performing the same duty, and the record disclosed that this custom was known and acquiesced in by the defendant. Held, that the testimony was admissible upon the issue of contributory negligence with which the plaintiff was charged by the defendant.

**3.—Trial—Improper Testimony—Not Reversible Error, when.**

The admission of improper testimony is not reversible error when testimony to the same effect by other witnesses is admitted without objection.

Appeal from the District Court of Hunt County. Tried below before Hon. T. D. Montrose.

*John T. Craddock, Coke, Miller & Coke, Perkins & Craddock* and *T. S. Miller,* for appellant.—That the court erred in refusing to give defendant's special charge No. 8, cited the following authorities: Railway Co. v. McGlamory, 89 Texas, 685; Railway Co. v. Rogers, 91 Texas, 51; Railway Co. v. Hall, 98 Texas, 480; Railway Co. v. Mangham, 95 Texas, 413; Railway Co. v. Lowe, 86 S. W., 1059.

Upon the issue of the negligence *vel non* of the appellee in alighting from the train at the time, place, and under the circumstances of the accident, evidence as to the habit or custom of conductors generally to alight from moving trains at Hughes was incompetent and inadmissible, and especially was such evidence incompetent and inadmissible in view of the evidence showing that the appellee was not looking where he was stepping at the time he left the caboose, and of the evidence showing that the train was moving from ten to twenty miles per hour at the time he stepped therefrom. Railway Co. v. Johnson, 92 Texas, 380; Railway Co. v. Evanisch, 61 Texas, 3; Railway Co. v. Rowland, 82 Texas, 171; Railway Co. v. Eason, 35 S. W., 210; Moody v. Railway Co., 182 Mass., 158 (65 N. E., 29); 1 Elliott, Evidence, secs. 185-186, and authorities there cited.

*Yates & Carpenter,* for appellee.—The defendant having charged the plaintiff with contributory negligence in alighting from its moving caboose at the time, place, and under the circumstances, the testimony of the witnesses Quigley and Alston, to the effect that they knew the cus-

tom of defendant's conductors with reference to alighting from their caboose at the same place, for the same purpose, and under the same or similar circumstances, and that it was customary for them to alight from the caboose at the depot when passing and register their trains, was admissible for the jury to consider in determining whether or not he was guilty of contributory negligence in alighting from the caboose when he did. Railway Co. v. Pitts, 42 S. W., 255; Railway Co. v. Cowser, 57 Texas, 293; Bering Mfg. Co. v. Peterson, 67 S. W., 133; Railway Co. v. Waller, 65 S. W., 210.

RICE, ASSOCIATE JUSTICE.—This suit was brought by appellee against appellant to recover damages for personal injuries received by him in alighting from a train at Hughes Station, one of its depots, while he was a conductor upon one of its freight trains. It is substantially alleged that on and prior to September 10, 1905, the day on which the accident occurred, appellant was maintaining a depot for freight and passengers at Hughes Station, on its line, for the use of such persons as might have occasion to visit or be about the same, including its conductors; that said company had constructed at said place a platform, known as a gravel platform, composed of gravel, sand and dirt, which it permitted to become out of repair, and unsafe for the use of its conductors, who were required in performance of their duties to use the same in connection with the operation of their trains, in that it permitted gravel and rocks of various sizes to be and remain upon said platform near the line of its railway, and at a place where its conductors frequently and commonly alighted from its trains; that such loose gravel and rock were of such sizes and shapes as to render the surface of the platform uneven, and to endanger the safe footing of those having occasion to pass thereon, and especially the appellant's conductors, whose duties frequently required them to alight from and to board trains while in motion.

It was further alleged that said platform near the line of the track was not level, but was sloping from the line of the track a distance of some four or five feet away in the direction of its depot; that the condition of said platform in said particulars was known to appellant, or, by the exercise of ordinary care, would have been known to it, and was unknown to appellee. It was further alleged that appellee was in the employ of appellant in the capacity of conductor in charge of one of its freight trains on the 10th of September, 1905, and that on the arrival of the train at Hughes, in the discharge of the duties of his employment, he was in the caboose of the train, and that when the caboose reached a point opposite the depot it was his duty to alight therefrom for the purpose of registering the arrival of the train at the station; that while the train was moving slowly, and when the caboose reached a point opposite the depot, in pursuance of his duty, he did alight from the caboose upon the platform, and that when he alighted one or both of his feet stumbled upon or came in contact with the gravel or rocks lying upon the surface of the platform, and on account of the sloping condition of the platform, and on account of the condition of the platform in both of such particulars, he was thrown down and under the wheels of the train, seriously and permanently injuring him, setting forth the same in detail.

The appellant answered by general demurrer, general denial, and specially, to the effect that the platform was in good repair; that at the time of the appellee's injury, and for a long time prior thereto, he was perfectly familiar with the platform and the manner of its construction, and the material of which it was constructed, and had been using it for months prior thereto in the same condition that it was in at the time of the alleged injury, and that if appellee attempted to, and did alight, upon the platform from a moving train, the same was under his immediate control and direction, and that he attempted to and did alight therefrom when it was going at a high rate of speed, and with full knowledge of all the circumstances and conditions then existing, whereby he assumed the risk of so doing. And further, that if there were loose gravel or rocks upon the platform, he had full knowledge thereof before he attempted to alight, and that the same was open and obvious to common observation; that, if the platform was uneven and sloping, appellee had full knowledge thereof before he attempted to alight from said train, and that the condition thereof was open and obvious to common observation, and that he assumed the risk thereof in attempting to alight from said train under the conditions and circumstances surrounding him. It was further alleged that it was not necessary for him to alight from the train at the time and place where he did, but before having done so he directed the engineer in charge of the train to go to the coal chute and water station, a point beyond, and some distance from where he alighted from the train, and that he could, and should, in the exercise of proper care, have remained on the train until it stopped at the water station or coal chute, where he could have alighted with perfect safety; but that, instead of his doing so, he voluntarily chose to alight at the time and place he did, while the train was moving at a high rate of speed, and that his fall resulted from his own want of care and carelessness, in that he attempted to, and did, alight from the train while it was moving at a rapid and high rate of speed, and in that he failed to use due care in stepping off the train, and carelessly and negligently held on to the same for too great a length of time, and negligently failed to observe just where he was stepping and what he was doing, and the injuries received by him were proximately caused and contributed to by his own negligence.

A jury trial resulted in favor of the plaintiff, from which this appeal is perfected.

By its tenth assignment of error, submitted as a proposition, appellant urges that the court erred in refusing to give special charge No. 8 requested by it, which is as follows: "If you believe from the evidence that, as the plaintiff alighted from the steps of the caboose, he was not looking where he was stepping, but that he was then looking at the brakeman on the platform of the caboose and if you further believe from the evidence that a man of ordinary care and prudence would, before stepping from the caboose to the platform, have looked where he was stepping; and if you further believe from the evidence that the failure of plaintiff to look where he was stepping just before alighting from the steps of the caboose, if he did fail, was a failure to use such care and prudence for his own safety as an ordinarily careful and prudent man would have used under like or similar circumstances and surroundings,

and that such failure, if any, caused or contributed to cause the injuries sustained by plaintiff, you will find for the defendant," because the defendant pleaded, among other things, that the plaintiff was guilty of negligence contributing to the accident and injuries, in that he failed to use due care in stepping off the train, which was moving rapidly, and negligently failed to observe just where he was stepping and what he was doing, and that his injuries were proximately caused by his own want of ordinary care; and that there was evidence showing that the plaintiff, as he stepped from the caboose of the train, which was moving at the time, did not look and was not looking where he was stepping; that he failed to observe just where he was stepping and what he was doing, but instead was, at the time that he stepped from the caboose to the platform, looking in the opposite direction, and looking at and talking to the brakeman, who was standing on the platform of the caboose above him.

The record discloses that when said train reached said station it continued in motion, and that while so moving plaintiff undertook to alight therefrom, his testimony showing that it was going at from six to eight miles an hour, and the evidence for appellant showing that it was moving at from ten to fifteen miles per hour. On cross-examination of plaintiff it appears that at the time, and while in the act of stepping from the moving train to the platform, he was not looking down at the platform, but that he was talking to and looking up at the brakeman, who was above him upon the platform of the caboose.

It has frequently been held that a party has a right to have the facts and circumstances upon which he relies for a defense affirmatively presented to the jury, and that it is reversible error to refuse such a charge when requested. In the present case the appellant, by its pleading and evidence, had raised the issue of contributory negligence, predicated upon the plaintiff's failure to observe due care and caution in alighting from a rapidly moving train, charging, in effect, that he was guilty of contributory negligence in failing to observe where he was stepping at the very time of alighting therefrom. The requested charge clearly and affirmatively presented this issue, and, in our opinion, the trial court erred in refusing to give the same in charge to the jury. (Missouri, K. & T. Ry. Co. v. McGlamory, 89 Texas, 635; Missouri, K. & T. Ry. Co. v. Rogers, 91 Texas, 52; St. Louis S. W. Ry. Co. v. Hall, 98 Texas, 480; Gulf, C. & S. F. Ry. Co. v. Mangham, 95 Texas, 413, and St. Louis S. W. Ry. Co. v. Lowe, 86 S. W., 1059.)

By appellant's thirteenth and fourteenth assignments of error it is urged, in effect, that the court erred in permitting the plaintiff to show, upon the cross-examination of defendant's witnesses Quigley and Alston, that it was the usual custom of plaintiff's conductors, upon their arrival at the depot at Hughes Station, when they intended to stop their trains in either the east or west yards, to alight from their cabooses for the purpose of registering their trains at the said station whilst the same were in motion and going anywhere from eight to twelve or fifteen miles per hour, because it was contended that said evidence was immaterial and irrelevant, and called for the opinion and conclusion of the witnesses upon a matter upon which it was the duty of the jury to pass, under all the facts and circumstances in the case.

It appears from the record that the witnesses referred to in the above assignments were allowed, over objection of appellant, to testify that they knew what was the usual custom of defendant's conductors with respect to alighting from their trains for the purpose of registering their arrival at Hughes Springs; and that Quigley, one of said witnesses, was allowed to testify, and he did testify, that it was the custom of defendant's conductors, when passing the depot building with their trains ' going anywhere from eight to fifteen miles per hour, to alight therefrom for this purpose. We do not believe that it was proper in this case, for the purpose of negativing contributory negligence on the part of plaintiff, as charged, in alighting from the rapidly moving train without observing where he was stepping, to show that it was the usual custom of defendant's conductors, in passing said station, to alight from moving trains for the purpose of registering the same. In order to determine whether the plaintiff was guilty of contributory negligence, it was proper to show all the facts and circumstances surrounding him at the time of the alleged injury, which seems to have been allowed in this case. But we are unable to see what good purpose would be subserved by allowing proof on the part of appellee to establish the fact, if it be a fact, that it was the usual custom of other conductors upon this road to do the same thing in a similar manner. Their custom in alighting from rapidly moving trains, in our opinion, could throw no light upon the present inquiry, because the appellee's care, or want of care, in alighting from said train, must be shown by the facts and circumstances surrounding him at the time of the act of alighting from said train, and must be viewed from his standpoint at the time, and not by the custom of others.

In 21 Am. & Eng. Ency. Law (2d ed.), p. 524, it is said: "It is well settled that usage or custom can not excuse negligence, or, in other words, though the defendant's act or omission was customary, or was performed in the usual or customary manner, it may yet be deemed negligent, if not up to the standard of reasonable care. Not a few cases, indeed, hold that evidence of usage or custom is inadmissible on the question of negligence."

In 1 Elliott on Evidence, section 186, it is said: "So the custom or practice of others to perform an act in the same negligent way, is not admissible to show that the plaintiff was free from contributory negligence," and the authorities cited in note thereunder sustain the text.

In 92 Texas, 382, Judge Gaines says, in treating of this subject: "We think the rule is well settled that when the question is whether or not a person had been negligent in doing or in failing to do a particular act, evidence is not admissible to show that he has been guilty of a similar act of negligence, or even habitually negligent upon a similar occasion."

In Gulf, C. & S. F. Ry. Co. v. Evansich, 61 Texas, 3, where it was sought to hold a railway company responsible in damages for failing to lock or guard its turn-table, and where the following instruction was given: "The fact that it was not the custom upon other roads in Texas, and in other States, and upon defendant's road, to fasten, lock, guard or watch the turn-tables, will not affect plaintiff's right to recover in this suit, if it is shown by the evidence that he has received damages, as alleged. It is the legal duty of the defendant to keep its turn-tables locked, fastened or guarded, to keep children without discretion from be-

ing injured thereon, without regard to the custom of railroads as to not fastening or guarding turn-tables." Judge Stayton, in delivering the opinion of the court, says: "It is certainly true that the habitual practice of negligent acts by any number of railways for any period of time can not make a negligent act an act of due care and diligence. The charge in question does not inform the jury that a failure to perform a given act is negligence, but it does inform the jury, in effect, that the habitual practice of the appellant and of other railways not to fasten, guard or watch turn-tables, would not affect the right of the appellee to recover 'if it is shown by the evidence that he has received damages, as alleged.' The petition alleged that the injury was received through the negligent act of the appellant, and whether this was true or not was left to the jury to be determined by the evidence. The last part of the charge, though it refers to given methods of securing the turn-table, could not have been understood by the jury otherwise than as instructing them that it was the duty of the railway company so to keep its turntable that children not having sufficient discretion to know and avoid danger attending the use of it, could not use it. This is certainly the duty of a railway company, and it was not improper for the court so to inform the jury, the other conditions upon which the liability of the appellant depended having been given in the charge." The charge was held not error.

In Gulf, C. & S. F. Ry. Co. v. Rowland, 82 Texas, 166, it was held that it would seem that a custom or the habitual conduct of the defendant is not admissible to show the existence or absence of negligence in a given case. This fact—negligence—must be proved by the circumstances of the identical case under investigation. The same doctrine is held in International & G. N. Ry. Co. v. Eason, 35 S. W., 210.

In discussing a similar question in the case of Southern Kansas Ry. Co. v. Robbins, 43 Kan., 145, where the question was as to whether the deceased was negligent in climbing the ladder of a box car, evidence was offered as to the practice and custom of other employes in ascending ladders of box cars, the court said: "Neither was the testimony introduced, in regard to how railroad men should and did ascend the ladder of a box car, relevant or competent. The practice followed by others throws no light on the care used by Patterson in this case. It is not claimed that the opinions of experts are necessary in the case, and to allow testimony as to how others climbed the ladder would be to create collateral issues as to the prudence of their conduct, and to unnecessarily protract the trial. The question whether Patterson was guilty of such negligence as would preclude a recovery was an issue before the jury, and the practice or usage of others would not tend to prove care on his part, and such testimony should not have been received," citing many cases in support of the doctrine announced by the court, among others, Railway Co. v. Evansich, *supra*.

In Hughes v. Chicago & A. R. Co., 30 S. W., 127, which was an action against the railway company for personal injuries received by the plaintiff from a mail sack which was thrown from the defendant's train while it was in motion, the company sought to show, as a matter of defense, that it had been its custom to throw mail sacks from its trains while the same were in motion in passing the station where the injury occurred;

and the court was asked to charge the jury that if the defendant company had been accustomed to throw mail sacks from its trains while in motion, and no personal injury had occurred prior thereto to any person therefrom, the jury would not be warranted in finding that the mail sack in question was negligently thrown. The trial court refused to give said charge, and the Supreme Court of Missouri, Judge Robinson delivering the opinion, says: "That the giving of the instruction would amount to the assertion that the custom, however dangerous to human life it might be, had it been pursued for a period of eight months by defendant without injury to anyone, might be interposed as a defense from the consequence of its dangerous continuance. The duty enjoined upon the defendant to exercise care, caution and vigilance is not dependent upon the fact that, upon some other occasion, a like injury had happened at this place, and under similar circumstances and conditions. The act itself was dangerous, the consequences of which could have been reasonably foreseen, and injuries from it reasonably been avoided only by the exercise of the greatest care on the part of defendant to warn all persons on its platform to be on the lookout. There was a natural and probable connection between throwing the mail sack from the fast moving train upon a platform where passengers might be expected to be, and where they were invited and solicited to be by defendant itself, and the injury which actually happened to this plaintiff. Neither the previous vigilance of defendant for the past eight months (if it was its vigilance that saved the plaintiff and others from a similar accident) nor the extraordinary vigilance and precaution of those who, on former occasions, had been present at its depot platform when its agents were discharging mail sacks from its rapidly moving trains, nor their skill as dodgers of flying mail sacks, nor that indefinable influence or agency that seems ever to attend the acts and doings of some parties and institutions (despite themselves) called 'good luck,' had they all conspired and combined to save defendant from the natural consequences of its dangerous undertaking, and prevented an injury to anyone, could be called to the aid of defendant for its carelessness on that occasion. The danger of the undertaking was a continuing demand upon defendant to the exercise of the extremest care and precaution to avoid an accident, and no aid can be invoked from any custom or usage, or former good behavior of others, or good luck of defendant, to shield it from the negligent act that resulted in plaintiff's injury," holding that the trial court did not err in refusing said instruction.

In Warden v. Louisville & Nashville R. R. Co., 14 L. R. A., 552, which was an action to recover damages for an injury received by a brakeman while sitting on the cross-beam on the front of an engine, where the plaintiff sought to relieve himself from a charge of contributory negligence by showing a custom of other brakemen to ride in similar positions, but the evidence of which custom was excluded by the trial court, McClelland, Justice, delivering the opinion of the court, said: "It is insisted, however, that the case should be reversed because of the exclusion of certain testimony offered by the plaintiff, going to show a custom on the part of himself and other head brakemen on that train to ride between stations on the pilot. The city court did not, in our opinion, err in the exclusion of this testimony. The fact that one is

in the habit of doing an obviously dangerous thing does not make his act any the less a dangerous one. The fact that many, or all, of a limited class of persons customarily rode upon the pilot of an engine does not alter the characteristic of obvious peril which the law imputes to that position. It is negligence *per se* for persons to walk upon the track of railroads. Doubtless many persons are in the habit of using the track in this way; yet it has never been supposed, and it can not be the law, that such custom would convert the track, which the law declares to be *per se* a dangerous place, into a safe place. So a person may be in the habit of crossing railway tracks without stopping and looking and listening for approaching trains; yet we have never heard it suggested such person, when he finally reaps the penalty of his lack of care, is, because of such habit, not guilty of contributory negligence as a matter of law. Custom and usage may be relied upon to excuse the violation of a rule when the act involved is not negligent in itself, but only by relation to the rule violated. And so, when an act may be done in two or more ways, a resort to neither of which involves such obvious peril as raises the legal presumption or conclusion of negligence in the doing of it, a custom or usage to do it in a particular way may be looked to as tending to show that it was not negligence to resort to that method in the instance under consideration. But custom can in no case impart the qualities of due care and prudence to an act which involves obvious peril, which is voluntarily and unnecessarily done, and which the law itself declares to be negligent," holding that the court did not err in refusing to admit said testimony.

Authorities might be multiplied upon this subject, but we deem it unnecessary to cite others.

In the present case, while the duty was charged upon the plaintiff of registering his train at Hughes Station, still, in order to comply therewith, it is not alleged or shown to have been necessary for him to have alighted therefrom while the same was in motion, but he could have waited until after the train had stopped at the water tank or coal chute before performing his duty. The train, it is shown from the evidence, was being run under his control and orders, and if he saw fit, in his effort to comply with this regulation in the particular instance by alighting from the moving train, this was an election, it would seem, on his part to adopt the more hazardous manner of doing the act required of him, and where such is the case it was certainly incumbent upon him to exercise reasonable care in alighting from the train. And when it is alleged that he failed to do so, as in the present case, then the issue of negligence *vel non* should be determined by the facts surrounding him at the time of the injury without regard to what might be the custom on the part of other conductors to do a similar thing; and such custom can not serve the purpose of illustrating the transaction under investigation, and for this reason it is not admissible.

The remaining assignments of error, the most of which are addressed to supposed errors in the charge of the court and the refusal of requested charges by defendant, are overruled because, we think, in the main, the charge of the court correctly presents the law of the case, and is not open to the criticisms urged against it; but, on account of the errors indicated, the judgment of the court below is reversed and the cause remanded.

KEY, ASSOCIATE JUSTICE.—I concur in the conclusions reached in this case, but do not concur in all that is said in the foregoing opinion on the subject of custom. The evidence complained of related to the custom of one road only, and therefore it was not admissible. But, as bearing upon the question of contributory negligence charged against the plaintiff, I believe he would have the right to prove the general custom or practice of railroad conductors in the manner of performing the service in which he was engaged when injured. (Gulf, C. & S. F. Ry. v. Harriett, 80 Texas, 73; Texas & Pac. Ry. v. Reed, 88 Texas, 449; Galveston, H. & S. A. Ry. v. Pitts, 42 S. W., 255; St. Louis S. F. Ry. v. Nelson, 20 Texas Civ. App., 536; Gillett on Indirect and Collateral Evidence, 128.)

### OPINION ON MOTION FOR REHEARING.

#### Rendered June 24, 1908.

RICE, ASSOCIATE JUSTICE.—At a former day of this term this case was reversed and remanded on account of supposed errors of the court in refusing a special charge and permitting the introduction of certain evidence. Appellee, in his motion for rehearing, has submitted for our consideration a very full and able brief and argument, urging that the court erred in sustaining appellant's assignments relative to the two matters hereinafter discussed.

The special charge requested by the defendant, which we held in our original opinion should have been given, is fully set out therein, and it is not necessary to repeat it here. The appellee contends that the court's charge on this subject was as full as the law required, and more favorably presented the issue of plaintiff's contributory negligence than did the special charge referred to.

After a more mature consideration of this subject we are inclined to believe that appellee is correct in this respect, and that the main charge was sufficient. The court in its main charge told the jury that, "if you believe from the evidence that the plaintiff was guilty of negligence in attempting to alight from the train while the same was in motion, at the time and under the circumstances; or if you believe he was guilty of negligence in the manner in which he got off the train; or if you believe that he held on to the caboose for too great a length of time, or that he failed to observe where he was stepping or what he was doing; and if you further believe that he was guilty of negligence in either or any of such particulars, you will find for the defendant." By its answer defendant had raised the issue of contributory negligence on the part of plaintiff in failing to observe where he was stepping while alighting from the train. By the special charge the jury were not only required to believe that the plaintiff failed to look where he was stepping, but it also required the jury to believe that he was looking at the brakeman on the platform, before they could find for the defendant on this issue, thereby imposing a greater burden than the law really required; because, if plaintiff failed to observe where he was stepping when alighting from the caboose, and the injury was caused by reason thereof, it was immaterial where or at whom he was looking. If the special charge was incorrect in any particular, or if the same had already been given in the

main charge, the court was not required to give the same. We therefore hold that there was no error in refusing to give said special charge.

We also held in the original opinion that the court erred in permitting the plaintiff to show, upon cross-examination of the defendant's witnesses Quigley and Alston, that it was the usual custom of defendant's conductors, upon their arrival at the depot at Hughes Station, for the purpose of registering their trains, to alight therefrom in passing said station while the same was in motion. We are inclined to believe that we were in error in so holding, because the evidence disclosed that there was a custom on the part of appellant's conductors to alight from moving trains while passing said station, for the purpose of registering the arrival of said trains at said station, registering their arrival being a duty required of them at this place, for it would seem that if the company, with the knowledge of their mode of performing this service, acquiesced therein, that then it was competent to show what was the custom of performing such duty or service at Hughes Station by their conductors generally. And certainly the company in this case, by their acquiescence in this manner of performance of such duties by their servants, where the same had grown into a custom, would owe them the duty of exercising ordinary care to see that its platform was free from such obstructions as might necessarily interfere with the performance of such duty in accordance with such custom so acquiesced in by them; and the evidence would therefore be admissible on this branch of the case.

But, apart from whether we were right or not in this respect, it appears, upon a reinvestigation of this matter, that the record discloses that another witness, Pomeroy, was allowed to testify, without objection on the part of defendant, to similar facts relative to the custom of appellant's conductors in alighting from their trains while in motion to register the arrival thereof at said station, which fact was heretofore overlooked by us; so that if the evidence of Alston and Quigley was objectionable, as urged by appellant, still, having permitted another witness, as above shown, to testify without objection to similar facts, the error, it seems to us, in admitting same, was thereby rendered harmless, and appellant can not now complain thereof. So believing, we hold that it was not error to overrule defendant's objection to said testimony.

These being the only assignments of errors on the part of appellant which were sustained in the original opinion, the others all having been overruled, and believing now that we were in error in our former holding upon these questions, appellee's motion for rehearing is hereby granted.

We find that the evidence is sufficient under the pleadings to sustain the judgment upon the issue of defendant's negligence, as submitted under the charge of the court, and the issue of contributory negligence on the part of plaintiff, which was fairly submitted by the court, is not sustained by the evidence. We find that, under the facts of this case, the verdict of the jury is not excessive. We are therefore constrained to believe that no error has been shown in the proceedings of the court below, and its judgment is therefore affirmed.

*Motion for rehearing granted; judgment below affirmed.*

Writ of error refused.