TEXAS & P. RY. CO. v. SANDY.†

(Court of Civil Appeals of Texas. Texarkana. Oct. 19, 1911. Rehearing Denied Nov. 9, 1911.)

1. DEPOSITIONS (§ 110*)—OBJECTIONS—EVIDENCE.

An objection to a deposition on the ground that the notice of filing the interrogatories was served on attorneys who had not at the time become attorneys of record is properly overruled, in the absence of evidence supporting the facts on which the objection is predicated.

[Ed. Note.—For other cases, see Depositions,. Dec. Dig. § 110.*]

2. DEPOSITIONS (§ 83*)—OBJECTIONS—MANNER AND FORM OF TAKING.

An objection to a deposition on the ground that the notice of the filing of the interrogatories was served on attorneys who had not at the time become attorneys of record goes merely to the manner and form of taking the deposition, and under Rev. St. 1895, art. 2289, it must be presented by motion to suppress.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 219–226; Dec. Dig. § 83.*]

3. MASTER AND SERVANT (§ 278*)—INJURY TO SERVANT—NEGLIGENCE—EVIDENCE.

In an action for injuries to a freight conductor who stumbled over a movable object on the station platform while attempting to board his moving train, evidence held to support a finding of actionable negligence, based on the theory that the obstruction was on the platform through some agency over which the railroad company and its employés had control, and that no provision had been made for inspecting the premises for nearly 12 hours preceding the accident.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954–972; Dec. Dig. § 278.*]

Appeal from District Court, Tarrant County; Jas. W. Swayne, Judge.

Action by J. H. Sandy against the Texas & Pacific Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Spoonts, Thompson & Barwise, Chapman & Lockett, and W. L.·Hall, for appellant. Smith, Turner, Bradley & Powell, for appellee.

HODGES, J. The appellee, J. H. Sandy, recovered a judgment in the court below against the appellant for $1,500 for personal injuries. The testimony shows that in December, 1908, appellee was engaged in the appellant's service as conductor on one of its freight trains running between Ft. Worth and Biard. On the morning of December 11th, at 1:50 o'clock, appellee's train left Thurber Junction with 17 cars of coal destined for Ft. Worth. It arrived at Weatherford at 5:15 a. m. of the same day, and was there stopped for the purpose of enabling the appellee to register its arrival, as required by the rules of the appellant company. After having performed that duty, appellee walked back to his train, and gave the engineer the signal to start. He thus describes his movements and the circumstances attending the injury: "I gave the engineer a signal to pull out, and I started to walk back about three car lengths west from the station, and, as ·the caboose came along, I attempted to get on. I grabbed hold of the handhold as we·always do, on the rear end of the caboose, and I made about three steps.

When I did that I stepped onto a chunk, or something or other, I don't know whether it was coal, clinker, or rock; but it was some hard substance, which raised me off the ground and turned over under my foot and threw me right around under the step, skinning both of these legs clear up to my knees, and my ankles, and it drug me about 75 or 100 feet before it tore me loose, and it threw me right on that hard pavement right in front of the Weatherford station house, right in front of the passenger house. That hard pavement at Weatherford goes up above the station house there about, I guess, 30 or 35 or maybe 40 feet. I got on that hard pavement. Just east of the end of that hard stuff is where I attempted to get on. * * * After I gave him the signal, I walked on towards the west. The caboose reached me about three car lengths from that door. I had gotten back to a point opposite the west end of the building, just about even with the west end. I was right close to the edge of that cement. That cement extended down right close to the track. * * * I did not see this substance I struck until just as I was striking it. Just as I struck onto it, I saw it roll out from under my foot, saw it roll towards the track, right towards the track. I said it was about as big as my two fists. I don't know whether it was a piece of coal or a clinker. It was some dark substance. I don't know what it was."

The first error assigned is the action of the court permitting the appellee to read in evidence the deposition of one T. C. Lewis, a brakeman on the train with the appellee. The bill of exceptions shows that, when the deposition was offered in evidence, the plaintiff objected to its introduction, "because it is not a deposition within the meaning of the law; that there were no attorneys of record for the defendant, and could not be until an answer was filed, which was filed on the appearance day of the April term of the court following the February, in which the interrogatories and original petition were filed. Hence service was never had on anybody. Therefore the deposition is not a deposition in the meaning of the law." The bill fails to state the evidence of any facts in support of the objection made, and, if any appear in other portions of the record, counsel for appellant have not referred to it. The substance of the objection is that notice of filing the interrogatories was served upon certain attorneys who had not at the time become attorneys of record, and that the service was therefore of no effect.

[1] In the absence of some evidence that the facts upon which the objection was predicated existed, it is not apparent that the court committed any error. Terrell v. McCown, 91 Tex. 231, 43 S. W. 2; Railway Co. v. Sauter, 46 Tex. Civ. App. 309, 103 S. W. 201.

[2] But there is another reason which we think justifies the holding that the court below committed no error in refusing to exclude the deposition upon the objection made. Assuming that the facts stated by counsel for appellant had been established in the court below, the objection is one which went to the manner and form of taking the deposition, and should have been presented in the form of a motion to suppress. Article 2289, Rev. Civ. Stat.; Grigsby v. May, 57 Tex. 255; Railway Co. v. Barrett, 46 Tex. Civ. App. 14, 101 S. W. 1025; Mann v. Matthews, 82 Tex. 98, 17 S. W. 927; McMahan v. Veasey, 60 S. W. 333.

[3] It is insisted that the evidence was insufficient to show any actionable negligence on the part of the appellant justifying a judgment for damages. Giving to the testimony that weight which the jury must have done in arriving at their verdict, and which, we think, is not unwarranted, we conclude that the following facts were established: All trains passing through Weatherford at that time were required to stop and be registered by the conductors in charge of them. The telegraph office where this was done was situated on the side of the right of way, near the tracks, being separated therefrom by a hard graveled walk or platform. This walk or platform extended some distance in both directions from the telegraph office, and parallel with the tracks. Many and probably all of the trains that passed through Weatherford carried coal either as freight or fuel. Lumps of coal would at times fall off in the yards, and the firemen in charge of trains would sometimes empty their ash pans while the trains were standing, not far from the telegraph office. In this way both coal and clinkers accumulated in the yards, and some of them were seen at different times on the graveled walk or platform between the tracks and the telegraph office. Lewis testified that on the night the appellee was injured he discovered coal and clinkers on this platform. The railway company employed a man to look after the yards, sidewalk, and platform during the daytime, and it was his duty to remove the coal and clinkers and other unsightly objects from the platform and yards. More than one witness testified that the presence of these lumps of coal and clinkers made the platform and yards dangerous. It was agreed that thirteen trains passed through and registered at Weatherford on the night of the accident.

It is urgently contended that the facts of this case fall within the principles discussed and applied in the cases of M., K. & T. Ry. Co. v. Romans, 121 S. W. 1104, and M., K. & T. Ry. Co. v. Jones, 125 S. W. 309. In each of these cases the Supreme Court reversed the judgments of the trial court and the Court of Civil Appeals, upon the ground that the evidence was insufficient to show negligence.

In the Romans Case the plaintiff in the suit was in the employ of the defendant, loading cars with gumbo at a plant owned and controlled by the latter. At this plant there were three large embankments of burnt gumbo in parallel rows several hundred yards in length and several feet high. The plaintiff was injured by stepping into a hole approximately 2½ feet long by 2 feet wide and 1½ feet deep. This hole was filled, or nearly so, with fine dust, or soot, from the gumbo, which obscured the hole and prevented the plaintiff from seeing it or knowing of its existence. The railway company had a track crew who worked there and moved the track and leveled up the ground when necessary. The evidence did not disclose how the hole came to be there, or show any circumstances by which the cause of its being there could have been conjectured. The evidence was held to be legally insufficient to show liability. The court said: "The fact upon which plaintiff must found a right of recovery is the existence of a hole concealed by the soft matter with which it was apparently filled, for we cannot agree that such a hole unconcealed at a place like this would be any more dangerous, or any more evidence of negligence, than a like hole would be if located by a wagon into which a servant is shoveling dirt or other matter. The risk from such a condition would be so slight and so obvious that the servant might well be expected to guard himself against it, and this would require no more experience than is possessed by the average adult. The place here in question is not like a depot platform or a railroad track or other similar place, and the same diligence in keeping it is not to be expected."

In the Jones Case the plaintiff was a brakeman on one of the railway company's trains, and was injured by stepping off and onto a bolt which had been left lying in the railway yards. The evidence showed that the bolt was one of a kind used in the machinery of the railway company; but how it got in the yards the evidence did not disclose. It was also shown that the yards were inspected at reasonable intervals, and objects of this kind removed. There was testimony to the effect that one or more of those charged with the duty of inspection passed along by the place where this bolt was lying, and that, if it had been there, they would have seen and removed it, but that they did not see it. The court held that the presence of the bolt in the yards at that particular place might as easily be attributed to the acts of some third party as to the railway company or any of its employés, and that there was no evidence upon which to support a conclusion that there was not sufficient provision made for inspecting and removing such objects from the yards. The court said: "In order to constitute it (negligence), the bolt must have been put on the track by some employé, or its presence there must have been known to some of them before the accident, or must have continued long enough to justify the inference that the failure to know it was due to a want of proper care."

It will be observed that the conditions relied on in both of the above cases in order to establish negligence are essentially different from those involved in this. In the Romans Case it was held that the mere presence of a hole in the ground at that particular place should not be considered sufficient evidence of negligence to form the basis of liability. In the Jones Case the ruling was predicated upon the conclusion that the presence of the bolt at the place where the accident occurred was as easily attributable to the agency of a third party as to that of the railway company or its employés. It seems that in this case the court reached the further conclusion that the evidence showing the exercise of proper care on the part of the railway company in making inspections for the purpose of discovering and removing such obstructions was undisputed, and should be accepted as true. In the case here under consideration the evidence justifies the following conclusions: That the presence on the platform at the place where the appellee was injured of such obstruction as that which caused his fall produced a situation which might well be regarded as dangerous to such employés; that the appellant appreciated that danger, and had employed an agent to remove such during the daytime; that the obstruction was a lump of coal, or a clinker, and was on the platform through some agency over which the appellant and its employés had control; that no provision was made for inspecting the premises at night, and for a period of nearly 12 hours immediately preceding the accident, for the purpose of removing such obstructions. We think the testimony was sufficient to support the judgment. M., K. & T. Ry. Co. v. Kennedy, 51 Tex. Civ. App. 466, 112 S. W. 339; El Paso & S. W. Ry. Co. v. Alexander, 117 S. W. 927.

The remaining assignments of error are without merit, and are overruled.

The judgment of the district court is affirmed.

LEVY, J., not sitting in this case.