## HOUSTON E. & W. T. RY. CO. v. JACKSON.
### (No. 1013–4899.)

Commission of Appeals of Texas, Section A.
Nov. 30, 1927.

**1. Appeal and error ☞835(1)—Judgment of Court of Civil Appeals has none of elements of finality pending disposition for rehearing, and all errors properly assigned may be corrected (Rev. St. 1925, arts. 1864, 1877).**

Under Rev. St. 1925, arts. 1864, 1877, a judgment of a Court of Civil Appeals has none of the elements of finality pending disposition of motion for rehearing duly filed, and court may correct many errors sua sponte and all errors properly assigned.

**2. Appeal and error ☞882(8)—Plaintiff who made certain issue held estopped on appeal to question materiality of evidence on that issue.**

Plaintiff who made issue in pleading and proof concerning identity of builder and owner of dollyway and tracks on which railroad employee was injured *held* estopped on appeal to question materiality of allowing evidence additional to, or contradictory of, evidence introduced by him on that issue.

**3. Appeal and error ☞1050(2)—Admission of immaterial evidence is harmless, where testimony tending to establish same facts is admitted without objection.**

Erroneous admission of immaterial evidence is harmless, where testimony tending to establish the same facts is admitted by the court without objection.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Suit by Herbert S. Jackson against the Houston East & West Texas Railway Company. Judgment for defendant was reversed and remanded in the Court of Civil Appeals (293 S. W. 865), and defendant brings error. Judgment of Court of Civil Appeals reversed, and judgment of district court affirmed.

Baker, Botts, Parker & Garwood and Garrison & Watson, all of Houston, and I. D. Fairchild, of Lufkin, for plaintiff in error.

Collins & Collins, of Lufkin, for defendant in error.

NICKELS, J. Jackson sued to recover for personal injuries received, it was said, through negligence of the railway company in named respects. The case was submitted on special issues. In response, the jury answered that the railway company was negligent in one respect; that such negligence was not a proximate cause of the injuries; that the railway company was free of negligence in another respect; that Jackson was guilty of negligence which was a proximate cause of his injuries; and that his injuries were "due to one of the risks ordinarily incident to the business in which he was engaged." Judgment on the verdict was rendered for the railway company. Jackson filed a motion for new trial, which was overruled. The only assignment made in the appellate court has relation to the admission of certain evidence. These facts, with some elaboration, appear on the face of Jackson's brief in the Court of Civil Appeals or by way of presumptions arising on the matter as there presented.

That brief, however, purports no observance of the rules in many important respects; e. g., it exhibits no preservation of exception to the court's action in admitting the evidence of which complaint is made, and it contains no statement either negativing the admission of like evidence without objection or showing that other like evidence was admitted against his objection. The brief is not one upon which the appellate court could properly dispose of the case without waiving its defects and supplementing its showing by consultation of the transcript and statement of facts, and that consultation would necessarily disclose presence of evidence of like import received without objection. We make this statement about the brief because the Court of Civil Appeals held that failure of the railway company to brief the case and to interpose counter assignments required its acceptance of appellant's "theory" in the first instance, and cut off its power to correct, on motion for rehearing, error which it may have committed in original disposition of the case. 293 S. W. 865.

Writ of error was allowed, particularly, upon claim of error in the latter ruling as well as in reversal of the judgment and re-

mander of the cause, despite presence in the record, and without objection, of evidence establishing, or tending to establish, the facts shown, or undertaken to be shown, by the evidence whose admission caused the reversal.

[1] A judgment of a Court of Civil Appeals has none of the elements of finality pending disposition of a motion for rehearing duly filed (articles 1864, 1877, R. S. 1925), and the power to correct many errors sua sponte and all errors properly assigned is not to be doubted. G., C. & S. F. Ry. Co. v. Muse, 109 Tex. 352, 207 S. W. 897, 4 A. L. R. 613; Townes v. Lattimore, 114 Tex. 511, 272 S. W. 435.

In Jackson's petition (reproduced in the brief mentioned) there were specific averments to the effect that a certain "platform, dollyway or skidway," had been erected near the track by the railway company for the "mutual advantage and benefit" of the railway company and Martin Wagon Company "in the shipping of logs," etc., and that on the date in question it was "under the control and management" of the railway company, and that the railway company had constructed a spur track near the "dollyway," and owned, maintained, and controlled same at the time. The distance left between the end of the "dollyway" and the spur track, in the construction, maintenance, etc., constituted one act of negligence charged and the omission out of which arose the alleged failure to use due care in respect to "safe premises" for the employee's work. There was, of course, a general denial by the railway company, and that was shown in Jackson's brief.

In course of trial, Jackson called Mr. Zeigler, general manager of Martin Wagon Company, as a witness, and on direct examination put in this testimony:

"I know the spur and loading docks that are involved in the subject-matter of this suit. As to what the Martin Wagon Company had to do with the construction of the skidways and loading docks there, I will state that we did not build that timber dock. That timber dock is on the railroad company's land."

On cross-examination, and without objection, Zeigler testified:

"That spur track was put in for the benefit of the Martin Wagon Company. We bought it and paid for it. It was put in there for the Martin Wagon Company to get logs to the factory here. We made a contract with the company to let us put in that spur. That is the loading racks that were put in for us to load logs for our factory. We contracted to put the docks there in order to be able to load logs. This is that contract; that is part of the contract. The railroad company did not put those docks there. * * * The company would not permit us to use the team across the main line loading logs; and other means—skidways or dollyways—were devised in order to load logs. Those logs were going to the Martin Wagon Company. I knew what that contract was when

I signed it. I knew what it contained. * * * I know now that it is a fact that those loading docks were built much closer to the spur track than this contract permitted. They were built some two feet or more closer."

On redirect examination by counsel for Jackson he said:

"I say that the loading docks were in fact built considerably closer to the track than the contract of the railroad company provided that they be built. * * * As to whether the structure there is still on the premises of the Houston, East & West Railroad Company, I will state that they own the property, unless you would term it under lease; we have the use of it. The Martin Wagon Company do not own the right of way."

On recross-examination he testified without objection:

"As to whether the Martin Wagon Company have got it leased, I will state that we have got this contract; yes, sir. * * * And the contract provides that, if they are built too close, we build them at our peril. And it also says, if we do it, the Martin Wagon Company is responsible for it. And that includes any damage to the property or person of anybody else; that is the way it reads."

The "contract," which, with pertinent correspondence, is the basis of Jackson's assignment is the "contract" mentioned, with some iteration, in the testimony of Mr. Zeigler excerpted above. The assignment presents: (a) That the "contract" and correspondence "undertook to delegate to Martin Wagon Company the general duty fixed upon the Houston East & West Texas Railway Company by law to furnish appellant with a reasonably safe place to work and reasonably safe tools and equipment, and which contract fixed upon the Martin Wagon Company the obligation of indemnity * * * for any damages resulting from an improper construction of the lumber dock in question or from improper maintenance of the premises upon which the same was situated"; (b) also that the evidence is "immaterial to any issue involved."

[2] The sixth paragraph of the "contract" is that to which the claim of delegated obligation must relate. It reads:

"The second party (i. e., Martin Wagon Company) also agrees to indemnify and hold harmless the first party (i. e., railroad company) for loss, damage or injury, from any act or omission of the second party, its employees or agents, to the person or property of the parties hereto and their employees and to the person or property of any other person or corporation while on or about said trackage and if any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto it shall be borne by them equally."

In respect to this paragraph at least two things are immediately noticeable: (a) Its terminology is not appropriate to an effort to delegate the obligation of "safe premises" or other duty. On the contrary, it evidences an agreement for indemnity, which, in respect to employees, etc., presupposes a continuing duty in the railroad company, for how could "indemnity" become due unless the railroad company were first held liable? (b) Zeigler had already testified, without objection, that the "contract" made the wagon company responsible, if the docks be "built too close," for "any damage to the property or person of anybody else," and those words, before the jury without objection, came much nearer describing an agreement to shift obligations than did the words of the "contract" itself.

Whether material or not, Jackson made the issue in pleading and proof about identity of the builder and owner of the dollyway and tracks, as is manifest. The remainder of the "contract" and correspondence has reference to that matter, and is cumulative. Having made the issue, and having omitted (through amended pleading, motion to strike all evidence on the immediate subject or request for instruction of the jury) effort at its elimination, he is, upon familiar principles, estopped to complain of the court's action in treating the issue as material, and hence in allowing evidence additional to, or contradictory of, that introduced by him. Cohen & Co. v. Rittimann (Tex. Civ. App.) 139 S. W. 59; Texas Emp. Ins. Ass'n v. Jimenez (Tex. Civ. App.) 267 S. W. 752, 757; Railway Co. v. McCarthy, 96 U. S. 258, 24 L. Ed. 693; Bigelow on Estoppel (6th Ed.) p. 783 et seq.

[3] Included in, or resultant of, that estoppel is the doctrine that practical error does not appear when, as here, testimony tending to establish the same facts is received by the court without objection. Sheldon Canal Co. v. Miller, 40 Tex. Civ. App. 460, 90 S. W. 206; M., K. & T. Ry. Co. v. Kennedy, 51 Tex. Civ. App. 466, 112 S. W. 339; Waters-Pierce Oil Co. v. Snell, 47 Tex. Civ. App. 413, 106 S. W. 170; Sullivan v. Fant (Tex. Civ. App.) 160 S. W. 612.

Whatever portions of the complaint, if any, remain despite these estoppels, are given disposition above in the remarks about the sixth paragraph of the "contract."

The views expressed render immaterial other questions presented, and lead to our recommendation that the judgment of the Court of Civil Appeals be reversed, and that the judgment of the district court be affirmed.

CURETON, C. J. The judgment of the Court of Civil Appeals is reversed, and that of the district court affirmed, as recommended by the Commission of Appeals.