## WATERS-PIERCE OIL COMPANY v. THOMAS H. SNELL.

### Decided November 6, 1907.

**1.—Personal Injuries—Explosion of Gas—Negligence—Evidence.**

In a suit for personal injuries caused by the explosion of gas in a ware-room, evidence considered, and held to support a finding of the jury that the defendant was guilty of negligence in having open cans of gasoline in such proximity to a furnace as to cause the explosion from which plaintiff's injuries resulted.

**2.—Same—Habitual Negligence no Defense.**

In a suit for personal injuries caused by the ignition of gas from an open furnace in a wareroom, the fact that no explosion had ever theretofore occurred under the same or similar circumstances, was no defense. Negligence for a long period of time, which does not result in injury to others, will not excuse or palliate the matter when the injury at last occurs through such negligence.

**3.—Use of Explosives—Degree of Care.**

One using highly explosive material is bound to exercise great care to prevent an injury which a prudent man would foresee might result from it.

**4.—Accident—Definition.**

An accident is inevitable if the person by whose agency it occurs neither has, nor is legally bound to have, sufficient power to avoid it or prevent its injuring another.

**5.—Personal Injuries—Verdict not Excessive.**

In the case of a young man eighteen years of age, so badly burned as to materially affect his sight and hearing, his hands so deformed as to render him incapable of manual labor, one ear gone and the other badly mutilated, his neck stiffened and his face so marred and scarred as to render him repulsive to his associates and to cause him continual suffering, a verdict for $30,000 can not be said to be excessive.

**6.—Personal Injuries—Pleading—Proof.**

In a suit for personal injuries, an allegation that plaintiff was so disfigured that he was constantly humiliated when coming in contact with his fellowmen, was broad enough to admit proof of embarrassment from the staring of people who met him.

**7.—Explosion—Gasoline—Expert Testimony.**

A witness who had qualified as an expert might testify as to the quantity of gas given off by a certain quantity of gasoline, and the distance at which the gas would be ignited by a flame.

**8.—Personal Injuries—Future Suffering—Pleading.**

In a suit for personal injuries, pleading considered, and held sufficient to admit evidence of future suffering.

**9.—Contributory Negligence—Knowledge of Danger.**

There can be no contributory negligence in the absence of knowledge of the danger at the time of the injury.

Appeal from the District Court of Harris County. Tried below before Hon. Chas. E. Ashe.

*Talliaferro & Wilson* and *Andrews, Ball & Streetman,* for appellant.—The evidence showed conclusively that the conditions existing at the warehouse of the Waters-Pierce Oil Company at the time of the accident had existed, both as to location of the gasoline tank and other storage tanks and the cooper shop, and the fire in the cooper shop, and as to the mode and manner of handling the gasoline and other oils, for many years prior to the accident, and that a person of ordinary prudence, exercising ordinary care, would not have foreseen that an accident was liable to happen. Trinity River Lumber Co. v. Denham, 85 Texas, 56; San Antonio Gas Co. v. Robertson, 93 Texas, 503; Brush Electric Light Co. v. Lefevre, 93 Texas, 604; Duerler Mfg. Co. v. Dullnig, 11 Texas Ct. Rep., 671; Allison Mfg. v. McCormick (Penn.), 12 Atl. Rep., 273; Schultz v. C. & N. W. Ry. Co. (Wis.), 31 N. W. Rep., 321; McNally v. Savannah, etc., Ry. Co. (Ga.), 12 S. E. Rep., 351; Doyle v. St. P., etc., Ry. Co. (Minn.), 43 N. W. Rep., 787.

The court erred in overruling defendant's motion for a new trial, because the verdict of the jury, and the judgment of the court thereon, is contrary to the law, and against the great weight and preponderance of the evidence, and manifestly shows sympathy upon the part of the jury for plaintiff, or prejudice against the defendant, in that the plaintiff, Thomas M. Snell, was guilty of negligence, which directly and proximately caused or contributed to his injuries. Bonnett v. G., H. & S. A. Ry. Co., 89 Texas, 72.

The court erred in overruling defendant's motion for a new trial, because the verdict of the jury and judgment of the court thereon is contrary to law and against the great weight and preponderance of the evidence, and manifestly shows sympathy upon the part of the jury for the plaintiff, or prejudice against the defendant, in that, the verdict of the jury and judgment rendered against the defendant for the sum of thirty thousand dollars was greatly in excess of the actual reasonable compensation to plaintiff for and on account of the injuries suffered by him at the time and since the accident and for injuries, suffering or damages reasonably to be expected to be suffered by him in the future, by reason of said injuries, the facts showing that while his injuries were undeniably serious, that at the time of the accident he was earning only forty dollars per month, although a well grown and well developed young man; that he is possessed of a good common school education, and far from being disabled from pursuing ordinary manual labor, and that he can pursue, and in many ways follow, different callings or

occupations for the purpose of earning money; that he is now sound and healthy, and that none of his vital organs are affected, and he is now in robust health, and no evil effects are to be apprehended in the future from his injuries, except the impairment of the vision of one eye, the disfigurement as the result of the burns, and some inconvenience in the movement of the muscles about his neck, all of which conditions promise to improve with further growth and time. Texas & N. O. Ry. Co. v. Kelly, 34 Texas Civ. App., 21; Gulf, C. & S. F. Ry. Co. v. Shelton, 30 Texas Civ. App., 72; Standard Oil Co. v. Tierney, 14 L. R. A., 677, and note showing cases which have been affirmed or reversed on excess of damages.

There being in plaintiff's petition no allegation that his injuries caused him embarrassment, it was improper for the court to admit evidence that such a result was caused by said injuries, and said evidence was inadmissible and prejudicial to the defendant. Dewees v. Bluntzer, 70 Texas, 408; Griffs v. Payne, 92 Texas, 297.

The testimony of P. S. Tilson was inadmissible because it was predicated upon the assumption that the gasoline gas was caught by a current of air and carried to the fire, and this assumption was not based upon any facts testified to by any witness, and was in itself a mere opinion as to a matter of fact to which no witness had testified, and as to which the witness under examination had not shown himself qualified to express an opinion. Prather v. McClelland, 76 Texas, 588; Armendaiz v. Stillman, 67 Texas, 458; U. S. v. Ross, 92 U. S., 281 (L. C. P., book 23, 707); Missouri Pac. Ry. v. Porter, 73 Texas, 307.

The court's charge was erroneous, in that it submitted to the jury as an element of damages, mental pain which would be suffered in the future by plaintiff on account of any of the injuries plead by him in his petition, whereas no such element of damages was alleged in plaintiff's petition. Texas & P. Ry. Co. v. Curry, 64 Texas, 87; Campbell, Receiver, v. Cook, 86 Texas, 632; Missouri, K. & T. Ry. Co. v. Cook, 27 S. W. Rep., 769; Ft. Worth & D. C. Ry. Co. v. Measles, 81 Texas, 474; Gulf, C. & S. F. Ry. Co. v. Sparger, 32 S. W. Rep., 49; International & G. N. Ry. v. Shaughnessy, 10 Texas Ct. Rep., 826; 3 Sutherland on Damages, 427; Chitty on Pleading, vol. 1, p. 396; City of Dallas v. Jones, 93 Texas, 47; Gulf, C. & S. F. Ry. Co. v. Garrett, 17 Texas Ct. Rep., 560.

The charge was erroneous, because it affirmatively instructed the jury to find for the plaintiff in case the premises and conduct of the business were dangerous, and the defendant negligent, conditional only that "the danger of being thus injured, if there was danger, was unknown to plaintiff," thereby making actual knowledge of the danger to plaintiff necessary before a verdict could be rendered for the defendant, whereas, the defendant was entitled to a verdict if, from his knowledge of the conditions, or his experience in the business, or from warnings given him, in the exercise of ordinary care, he must necessarily have known of the danger of injury. Bonnett v. G. H. & S. A. Ry. Co., 89 Texas, 72; El Paso & N. W. Ry. v. McComas, 81 S. W. Rep., 761; Trinity River Lumber Co. v. Denham, 85 Texas, 60; Wharton's Law of Negligence, secs. 77-78.

*Lovejoy & Parker,* for appellee.

FLY, Associate Justice.—Appellee, a minor, through his father as next friend, sued appellant, Louis S. Fries and Robert E. Armstrong for damages alleged to have accrued by reason of injuries inflicted on his person through an explosion of gas caused by the negligence of appellant. It was alleged that appellant owned and operated an extensive warehouse in the city of Houston, Texas, where it sold and distributed oil, gasoline and other substances of like character, all being highly inflammable, and that in said warehouse was located a cooperage shop in which appellant operated a furnace, which was about four feet square. After enumerating the injuries inflicted upon appellant the petition proceeds:

"Plaintiff alleges that his injuries, as aforesaid, were the direct and proximate result of the joint and concurrent negligence of the defendants, and each of them, in that:

"They and each of them negligently and carelessly caused, permitted and directed to be constructed and maintained in dangerous and hazardous proximity, tanks containing gasolines and other oils of highly inflammable character, as aforesaid, to the cooperage shop, with its open furnace, constructed, as aforesaid, and in that:

"They negligently and carelessly permitted and directed gasolines to be drawn from one of said tanks, as aforesaid, located in dangerous proximity to said open furnace, and caused and permitted said gasolines to be transferred by its servants to other cans and put into other cans. That it was negligence and carelessness on the part of the defendants, and each of them, and their servants, to permit a fire to burn in said furnace while gasolines were being drawn from said tanks. That they negligently and carelessly caused and permitted cans of gasoline to stand in the cooperage shop, near said open furnace, and that fumes, vapors and gases arose from the tanks and cans, from which the gasoline was being drawn, and to which it was being transferred, and in which it was standing in the cooperage shop; that said fumes, vapors and gases ran towards said fire, or came in contact therewith, and, as a result thereof, ignited or exploded, and caught fire, as a result of which the plaintiff was burned as aforesaid."

Appellant and its codefendants answered by general demurrer, general denial and specially pleaded assumed risk and contributory negligence.

The cause was tried by jury and resulted in a verdict and judgment in favor of Fries and Armstrong, but against appellant for the sum of thirty thousand dollars.

It appears from the transcript of the evidence that appellee, a boy of 18 years of age, at the time of the accident, was permanently injured by wounds inflicted on him by the explosion and ignition of gas in the warehouse of appellant in the city of Houston, that said explosion and ignition took place through the negligence of appellant in having an open fire in a furnace in such proximity to where oil and gasoline were being drawn as to ignite the gases which arose from the oil and gasoline. Appellant was charged with the knowledge that such gases would be generated and that they would

fill the tank room and cooperage room, and that they were highly inflammable and would probably be exploded and ignited by the open fire. At the time the explosion occurred appellee was sitting in an alley-way adjoining the cooperage room, on an empty can. There was first an explosion in the furnace, followed by a flash of flame which came out of the cooperage room and enveloped appellee and burned him about the face, neck, chest, arms and hands. The skin of those parts of his person being burned into a crisp condition, and his finger nails being burned until they turned back, and his whole hands were burned and up to the elbows. His mouth was so swollen from the burns that he had to be fed liquid food, through a glass tube, pressed between his lips, for about two months, and in places on his face the burns extended down into the muscles. Appellant's physician thus describes the condition of his patient and his treatment:

"I visited him about, sometimes as many as four times a day, and even at the night time, when he was suffering very much, as I stated before. I had a powdered preparation dusted over the surface, and where there would be a slough or hemorrhage from the part, of course, that would be attended to, it kept a nurse constantly mopping the pus and bloody material that was running from his eyes and the cracked parts of the flesh, that you might term another putrefaction, and his bowels, of course, they were constipated in the beginning on account of the opiates, I had to give him opiates right along to allay the pain, and I had to give him bromides to quiet the nervous system, and he was unable to take any solid food whatever, he took liquid, and that was through a tube with his lips pressed open, and he got his food in that way; but, well, I don't remember just how long, I suppose it was a couple of months that way, and the parts, after the little tissue or skin began to spring up underneath, there was a throwing off of the other parts, and partly drying up of the surface, but there was exudate of pus and blood for over three months, and he suffered with pain that length of time very much, and his eyes of course, the whites of the eyes, what you call the conjunctiva, after they had begun to open so I could see, they were sticking out of the parts; there was a raw piece of skin in the eye; his ears, there was a discharge from the ears, he complained of pain from them; well, his general system, he was knocked out generally; I continued the dry treatment until the parts became hard and harsh, and then I used a stuff to soften them up periodically and also a solution. I had different antiseptics to bathe the body to prevent the formation of pus, and to get it in as good sanitary condition as possible; his bowels were puffed quite a good deal on account of the flow of blood internally, and at times, there were several days that his kidneys were congested to a certain extent; he did not pass urine so very freely, and at several times there were hemorrhages from the deep burn down into the muscles, not so very extensive, but now and then he would have a hemorrhage two or three tablespoons full, and I was called several times on account of the hemorrhage, for fear he might bleed to death; his

hands were burned, and as I say, his finger nails were contracted, he couldn't move them any whatever, and he had to sit stationary, as much so as possible, just in a stationary position to prevent any extraordinary pain."

Pointing to the wounds, the physician thus described them to the jury: "Now, you see, the right ear, the upper third practically burnt off, down to the head in one place, and just a little part above the right ear, and in front you see the scar tissue running down here; that was very deep, and I suppose that scar tissue is an inch and a fourth in length, and possible one-third inch in width, extending down below the lobe of the ear, the canal of the ear; you can not tell very much difference there in it, and the side of the face here, you will see it was burned, but the skin has grown back on it, and getting back in a more normal condition.

"You see the nose, here, is a mass of scar tissue over the top, that extends possibly a third down on each side, that was running for something like one year; it was a year healing up; now and then it would heal up and break loose again. The upper lid, as you will see, has scar tissue there where it was last in healing; it was burned in the muscular tissue, on the right side, I suppose the scar tissue is about one-fourth inch in width, in length about the same; on the left side of the lips the same, his lips here, you see, they move all right, now the under lip on the right side is a mass of scar tissue, that is possibly half an inch long, and quarter of an inch wide, one-third inch wide; you see the contraction of the chin there; here on the cheek bone is a small mass of scar tissue; now you see under his neck, at the angle of the jaw, and underneath the skin here, was very badly burned, and this is a mass of scar tissue, which might be easily broken by cold weather, or anything that would act as an irritant; this scar tissue extends from one angle of the jaw to the other, and as to the length, I suppose it is something like eight inches, and right underneath the chin here, it is an inch and a half, and contracts the skin down there; he will never be able to raise his chin up very high on account of the contraction of the tissue there and muscular fibre; now, you see, the left ear, it was not burned so badly, it left more of it, but the upper and outer rim of the ear was completely burned off, and in front there is a mass of scar tissue that extends from the top of the ear to about an inch and a half below the left and extending in front of it something like one inch, extending from the auditory canal in front; now this is left in the same condition as the other, it is liable at any time to crack open, as exposure from cold weather; now, you see, on the right side, over the right clavicle, is a scar that extends about one inch and a half above the junction of the clavicle with the breast bone, the right collar bone, and extends down over the breast bone, there, for a couple of inches, something like that; now, on the left side, there is a large scar tissue there, over the left collar bone that in length is possibly three inches, in width, an inch and a half, or something like that; now, this tissue extends down over the left collar bone, over the chest or ribs, down to the breast bone, about something like two inches, and you see that heavy scar tissue,

and here is a mass of scar tissues, that is possibly three inches from the top of the breast. bone, extending down; now, you see, the right eye, there is a contraction of the upper lid to the extent he is unable to close it completely; you can show there in closing the eye, that way, and on account of that being that way, there is an overflow of tears, and this lid, apparently, the end of it was burned off, and the contraction there is so great it will never come down in a normal way : there will always be a contraction there; the lower lid shows a little diversion, slightly, but very little; now, open your eye; I don't think you could see that, there is a haziness over the right eye, you can see at a glance or when there is a light thrown over it, extends up about half way of the pupil of the eye, and of course that obstructs the vision of the right eye."

Appellant's hands were burned through the skin, and nothing was left but a mass of burned tissue and he can not close his hands, and they are very tender and pain him when he attempts to use them, and it was proved that these injuries were permanent and that appellee will never be able to chop wood, or perform farm work. The eyes of appellee were so badly injured that he can not see to read, the lids are inflamed, and heat or cold so affects the right eye, which he can not close, that it exudes water all the time and gives him much pain and annoyance. His lids were closed for about three months, and he suffered agonies from them and other burns, and was suffering at the time of the trial, and will probably suffer all his life. He was, when burned, sound and healthy and earning about forty-five dollars a month. It was stated by the physician that appellee's left eye would probably grow worse and that the right eye might remain in the condition it was at the time of the trial. He also stated that glasses would relieve the eyes of some strain, but as long as the eyes were congested as they were appellee could not read with comfort.

There was evidence tending to show that appellee was guilty of contributory negligence. The evidence of Weinberg, a witness for appellant, that after the explosion he "imagined" he saw appellee "coming in the door with two cans in his hands," was of too insubstantial a nature to deserve notice. Anyway, at that time the explosion had taken place and the fire had filled the room, and the presence of appellee with two cans could not have caused the explosion and fire. Weinberg stated that from a second to four seconds before the explosion he had seen appellee seated in the alleyway, and he refused to swear that he had seen appellee coming through the door. It all amounted to a "vain imagining" and nothing more; but if it had been true, there was nothing left to indicate that standing in the door with two cans was the efficient cause of the explosion, and the evidence could have had no potency except to contradict appellee's statement that he was seated in the alley-way when the explosion occurred.

It was in evidence that gasoline is volatile, that is, when exposed to the air it will pass off rapidly in the form of vapor and will permeate the atmosphere, that in drawing gasoline, as it was being drawn before and at the time of the accident, the gas would rapidly

pass off and that ten to fifteen quarts of gas for each gallon of gasoline drawn, in fifteen minutes would be generated and would permeate the atmosphere of the room in which it was drawn; that the furnace would draw the atmosphere laden with gas into it, and where there was a large amount of gas it could be ignited by fire in the furnace thirty, forty or fifty feet off. It was shown that under the circumstances prevailing before and at the time of the explosion the atmosphere in the cooperage room must have been laden with inflammable gas. The furnace was about 33 feet from where six or eight five-gallon cans of gasoline had been drawn, which must have given off in some fifteen minutes about 350 quarts of gas. There was nothing to indicate that appellee knew anything about the release of such quantities of gas, and the danger from an open fire in such proximity to it, as that in the furnace, in fact appellee testified that he did not know that there was any fire in the furnace at the time. Weinberg, the agent of appellant, knew the fire was there and had pushed in the pieces of wood just before the explosion, which took place in the furnace. The object in pushing up the fire was to make it burn more.

Petroleum and its sub-product, gasoline, and the gases generated by them were shown to be highly inflammable and appellant, who had for years been handling them, was charged with that knowledge, and it was no defense to this action to show that the fire in the furnace had not ignited the gas before. The very fact that dangerous agencies were being used by it in a careless way was proof of negligence in spite of the fact that such carelessness had not theretofore resulted in disaster. It was a danger that was imminent at all times. A man might walk for years through a powder magazine, where that inflammable material was open and exposed, with lighted cigars in his mouth and no accident might occur, but if at last an explosion took place, resulting from such conduct, it would be the most culpable negligence in spite of the fact that the disaster had not earlier occurred. Negligence for a long period of time, which does not result in injury to others, will not excuse or palliate the matter when the injury at last occurred through such negligence. The evidence indicated that an explosion under like circumstances might have occurred at any time, and, because for some inexplicable reason it did not occur does not transform such negligence into the exercise of ordinary care. As said by the Supreme Court of Missouri in the case of Fuchs v. City of St. Louis, 31 S. W. Rep., 115: "It is not always consistent with common prudence to await a catastrophe before taking precautions against it. Nor is it conclusive of careful management that a particular disaster has never before occurred. It is often an essential part of reasonable care to guard against those performances which men of ordinary prudence would naturally and reasonably anticipate in dealing with such dangerous agencies as science has contributed to our highly complex civilization."

The owner or controller of dangerous materials, such as gunpowder, dynamite or other explosives, is bound to exercise great care to prevent an injury which a prudent man would reasonably

foresee might result from them. Bahr v. Lombard (N. J.), 23 Atl. Rep., 167; Judson v. Giant Powder Co. (Cal.), 40 Pac. Rep., 1020; Wilbert v. F. Zurheide Brick Co. (Wisc.), 106 N. W. Rep., 1058.

There is nothing in the evidence to support the contention that the occurrence, herein described, was an inevitable accident. "An accident is inevitable if the person by whom it occurs neither has, nor is legally bound to have, a sufficient power to avoid it or prevent its injuring another." Shear. & Red. Neg., sec. 6. Appellant does not bring itself within this rule. Appellee was the servant of a customer of appellant, was lawfully on its premises for the purpose of procuring the product it sold, and it owed him the legal duty to exercise at least ordinary care to protect him from injury while there.

The facts in the case of Moeckel v. Cross, 76 N. E. Rep., 447, are very similar to those in this case, and while the fact that the defendant was carrying on his business contrary to law entered into the decision, yet it was also placed on the ground of overt negligence. The Supreme Judicial Court of Massachusetts said: "There was evidence that the defendant's servant was engaged in gluing barrels on the morning of the accident; that the door which closed automatically was hung on trucks at the top, and was not stable at the bottom, and would swing out from the bottom. There was also evidence that the method of filling the barrels with gasoline was through an automatic faucet, which shut off with a spring; that it did not always snap off, and then would run over. It further appeared that there was a lamp used for heating glue, which generally was kept lighted; and that there was always a strong smell of gasoline and kerosene about the room, and 'a good many feet from it.' In the explosion the defendant's servant was killed, and close to his body was found the body of a man not an employe of the defendant. The defendant contends that this man might have caused the explosion; but there is no evidence of this, and the jury were warranted in finding both that the defendant was maintaining a nuisance and was carrying on the business in a negligent manner."

Our conclusions of fact and the matters hereinbefore discussed dispose of the first and second assignments of error, and the third assignment of error, which urges excess in the verdict, can not be sustained. There is nothing to indicate passion or prejudice on the part of the jury, and the imagination fails to draw a more pitiable picture than the one presented by the disfigured body of appellee in this case. Just verging into manhood, with his life before him, he must, almost blind, go groping through the world, with deformed, almost helpless hands, one ear gone and the other badly mutilated, with neck so stiffened that he can scarcely turn his head and with a visage so marred and disfigured as to render him repulsive to his associates, constantly suffering both mentally and physically, his life wrecked beyond hope, we are unwilling to hold that thirty thousand dollars is an excessive sum for him to recover, especially when the excruciating agony that he suffered, as he lay blind and helpless for months, is taken into consideration, as it must have been by the jury. If compensation for what he has suf-

fered and lost is the test, as well as what he will suffer and lose, appellee has not received too much.

It was alleged in the petition that appellee was so maimed and disfigured that he was "constantly humiliated by coming in contact with his fellow men." We think that allegation was broad and comprehensive enough to include embarrassment arising from the staring of people who meet appellee, and that the court did not err, as claimed in the fourth assignment of error, in admitting proof of such embarrassment. If this be not true, proof of mental suffering would be admissible under the general allegation on that subject.

The witness, P. S. Tilson, qualified himself as an expert chemist and thoroughly acquainted with gasoline, and it was not improper to allow him to testify that the gas given off from gasoline can be ignited at distances remote from the gasoline, and to name the distances. The conditions had been shown upon which to predicate such an answer. The gasoline had been drawn for fifteen minutes or more, it had been shown that a large quantity of gas would be thereby generated, that it would fill the room, and that a fire was burning at a certain distance. The amount of the gas generated in a given length of time from the exposure of a given amount of gasoline had been estimated by the expert, and under the circumstances shown to exist, he could express an opinion as to the distance at which the gas could be ignited by the fire. There was evidence tending to show that the furnace, when a fire was kindled, would draw the air towards it. There is no force in the objection to the evidence. The evidence complained of was given at another time by the expert, without objection, and consequently there is no foundation for the assignment of error.

The sixth assignment of error attacks the charge because it submitted the question of future physical suffering on the part of appellee. It is admitted by appellant that the evidence showed that future physical suffering would be endured, but it claims that the pleadings did not allege that appellee would suffer physically in the future. The allegations as to injuries were as follows:

"The plaintiff was then and there seriously and permanently burnt and injured; that his head and face were burned; a portion of his ears was burned off; his hearing and eyesight affected; his eyelids burned and injured; that his hands, wrists and arms were so burned as to render them of little use to him in earning a livelihood. That his chest, shoulders, neck and back were burned, and that as a result of the burns and injuries received by him he has suffered and continues to suffer great physical pain and mental anguish, and has become incapacitated to perform any character of labor. That he is so disfigured and maimed and presents such a hideous aspect that he is constantly humiliated by coming in contact with his fellow men.

The rule on the subject is thus stated in section 1060, Sutherland on Damages: "The general allegation of damages will suffice to let in proof and warrant recovery of all such damages as naturally and necessarily arise or result from the wrongful act complained of;

the law implies such damages; that is, damages of that sort, and proof is necessary only to show their extent and amount. But where damages actually sustained do not necessarily result from the act complained of, and consequently are not implied, the plaintiff must state in his declaration the particular damage which he has sustained for notice thereof to the defendant; otherwise the plaintiff will not be permitted to give evidence of it on the trial."

The foregoing rule was approved in Texas & Pac. Ry. v. Curry, 64 Texas, 85, but the court amplified and explained the rule as follows: "The rule, however, is satisfied when, from the fact stated, the law infers other fact or facts; for whatsoever the law infers from a given state of facts, the adverse party is presumed to know, and must take notice of, whether it is specially pleaded or not. The law infers, when such injuries to the person are shown to have existed, as are alleged and proved in this case, that physical pain resulted therefrom; for by common observation we know that in the ordinary operation of natural laws, pain is a necessary result of such injuries, unless the condition of the injured person be abnormal, which will not be presumed." In that case there was no allegation of mental and physical suffering, the allegation being that the plaintiff had been cut, bruised and wounded about his hip and spine, and the court held evidence of mental and physical suffering admissible, and if admissible in evidence, of course, it would be proper to submit it to the jury. We think the allegations were sufficient to admit proof of future physical suffering, and the proof having been admitted, it was a proper element of damages to go to the jury. Tenderness of the skin, and sensitiveness of the eyes to heat and air must necessarily have arisen from burning the head and face so that the ears were burned off and the hearing affected, and from the eyelids being burned and injured and from the hands being so injured as to be of little use.

The court did not err in the charge complained of in the seventh assignment of error. There was no testimony that tended to indicate that appellee knew that there was any fire in the furnace on the morning of the accident, the fire not being built every day, and knew nothing of the danger of an explosion. His contributory negligence, if any, depended on his knowledge of the danger at that time. The charge as to knowledge was absolutely correct. It did not go into details as to the matter of the knowledge being actual or constructive and if appellant desired an amplification of the charge, it should have requested it. If there was any error in the charge it was one of omission and not of commission.

There was no evidence to support the special charge set out in the eighth assignment of error, and the court did not err in refusing to give it to the jury. The charge did not correct any generality of statement as to knowledge made by the court in the general charge. No one testified that appellee had carried gasoline through the cooperage room on the morning of the accident, and the charge must rest on the "imagining" of Weinberg that he saw appellee standing in the doorway to the cooperage room with two cans— not "cans of gasoline," as stated by appellant in its brief—in his

hands after the explosion, and the circumstances that a can with the bottom knocked out was afterwards found by the same witness near the door. Upon that foundation appellant sought to start an inquiry as to whether the gas emitted from cans carried by appellee caused the explosion. While the testimony was not in our opinion sufficient to form the basis of a charge, still the matters asked in the rejected charge were fully presented in the sixth subdivision of the charge where the jury were instructed that if appellant "was negligent in his manner of handling the oil cans, or cans of oil or gasoline, in that same were not properly closed so as to prevent the escape of oils and gases therefrom, or in that he carried the same through the cooperage shop, instead of through the warehouse, and that caused the explosion and fire, or if you believe the plaintiff, Thomas M. Snell, knew of the danger of being injured by an explosion of gas and fire, you will likewise return verdict for defendant."

· The charge of the court was an admirable presentation of the issues presented by the pleadings and facts, and in addition, eight special charges requested by appellant were given, presenting every conceivable phase of the case in its behalf. The judgment is affirmed.

*Affirmed.*

Writ of error refused.