**EL PASO PRINTING CO. v. GLICK.**[*]
(No. 1372.)

(Court of Civil Appeals of Texas. El Paso. Nov. 23, 1922. Rehearing Denied Jan. 4, 1923.)

1. Negligence ⊜⇒32(2)—Employé of owner of building held an invitee of occupant requesting repairs.

Where an officer of defendant corporation occupying a building requested the owner to send some one to fix a leak causing damage to goods in the basement, and plaintiff, an employé of the owner, came and was injured by the fall of a marble slab which the officer moved from its position against a wall, held, that plaintiff was an invitee to whom defendant was under duty to use ordinary care.

2. Trial ⊜⇒233(2)—Allegations of distinct assignments of negligence not submitted for findings should not be called to jury's attention without further instruction.

It is better practice not to call the jury's attention to allegations of separate and distinct assignments of negligence not submitted to them for findings without further instruction thereon.

3. Negligence ⊜⇒63—Fall of marble slab pulled from position not an "unavoidable accident."

Where one intending to remove a marble slab from its reclining position against a wall put his hands on the slab and pulled it with sufficient force to remove it, causing it to fall on another, such act was not an unavoidable accident (citing Words and Phrases, Second Series, "Accident"; also see Words and Phrases, First and Second Series, "Unavoidable Accident").

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Unavoidable Accident.]

4. Negligence ⊜⇒65 — "Contributory negligence" implies misconduct.

Contributory negligence implies misconduct, the doing of an imprudent act by the injured party, or his dereliction in failing to take proper precaution for his personal safety.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contributory Negligence.]

5. Negligence ⊜⇒66(1)—Knowledge of danger essential.

One does not assume a danger of which he has no knowledge or means of knowledge.

6. Negligence ⊜⇒105 — Doctrine of assumed risk inapplicable.

The doctrine of assumed risk does not apply in the absence of the relationship of employer and employé.

7. Negligence ⊜⇒138(3)—Charge on duty to invitee justified.

Where there was evidence that defendant, the occupant of a building, requested the owner to send some one to repair a leak, and plaintiff, an employé of the owner, came and was directed to go to see the leak with a view of repairing it and to see the damage to the occupant's goods, it was proper to charge that, if plaintiff entered with the defendant's consent to determine the cause of the leak or prevent damage, defendant would be under the legal duty to use ordinary care for his safety.

8. Negligence ⊜⇒138(3)—Charge on duty of occupant of premises held properly refused.

Where plaintiff, who entered to make repairs to prevent damage to defendant's goods, contended that he was an invitee on defendant's premises, the court properly refused to charge that, if plaintiff went on the premises with defendant's consent on his own business or that of any one else than defendant, the latter owed him no duty other than not to willfully injure him.

9. Damages ⊜⇒132(6)—$6,000 held not excessive for broken toes and bones in feet, resulting in long confinement, inability to get around well, and smaller salary.

A verdict for $6,000 for three broken toes of one foot of a man 49 years old and two broken bones in the other, resulting in falling arches, confinement to bed for about three months, continued suffering, inability to get around as well as before, and a smaller salary than $200 per month, which he was receiving at the time of the injury, held not excessive.

---

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[+]Writ of error granted February 28, 1923.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by E. F. Glick against the El Paso Printing Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Turney, Burges, Culwell, Holliday & Pollard and S. J. Isaacks, all of El Paso, for appellant.

Lea, McGrady, Thomason & Edwards, of El Paso, for appellee.

WALTHALL, J. E. F. Glick, appellee, brought this suit against the El Paso Printing Company, appellant, a corporation, to recover damages for personal injuries alleged to have been sustained by him on account of the negligence of appellant.

Appellee alleged, in substance, that in November, 1920, he was a supervising architect in El Paso, and that appellant was operating and conducting a printing and engraving business at the place described, and that the appellant used the basement of the building occupied by it for the storage of merchandise, paper, and other materials used by it in the operation of its business, and that at the time stated water pipes in or outside of the walls in the basement were in a bad state of repair to such extent that water was leaking through the walls of the basement in such manner as to injure appellant's stock of goods stored therein; that for the purpose of stopping the leakage of the water into the basement and further injuring appellant's stock of goods appellee, at the instigation of appellant, was requested by the owner of the building to call upon appellant and inspect the premises under appellant's direction; that appellee did at the time alleged call at appellant's place of business in the interest of appellant and for the purpose of preventing damage to appellant's goods, and made known to appellant the reason of his presence on said premises, whereupon appellant, acting through its president, Paul Heermans, requested appellee to enter its place of business for the purpose of making an inspection of the premises to determine the cause of the leakage of the water therein and remedying such defect and placing the premises in proper repair; that for said purposes and at the instance and request of appellant appellee accompanied Heermans into the basement of the building, which was strange and unfamiliar to appellee, who knew nothing of the contents of the basement or its arrangement, same being poorly lighted; that at said time appellant had placed against the wall in a dark corner of the basement a large marble slab (stating approximately its size and weight), its presence unknown to appellee, but known to appellant, and particularly to Heermans; that Heermans, in the interest of appellant and for the purpose of disclosing to appellee the condition of the wall with reference to the leakage of the water, requested appellee to follow him into the corner of the basement, which appellee did, whereupon Heermans, without warning to appellee, forcibly pulled said marble slab from its position against the wall, thereby causing same to fall upon appellee's feet, breaking the bones in the insteps of his feet, and otherwise causing the injuries complained of.

Appellant answered by general demurrer, general denial, special denial that appellee was injured in the manner and to the extent alleged; denied that appellee was acting as an employé or on behalf of appellant, but was acting in his own behalf; denied that appellee came to the premises of appellant at its instance or request for the purpose of making any examination of the premises to determine the cause of the leakage of water and remedy same, but that he came of his own accord, or at the instance and request of some one other than appellant or its employés, for the purpose of making an examination as to said leakage, and entered said premises of his own accord and without any invitation or request from appellant; denied that appellant requested appellee to approach the wall of the building in a dark corner of the basement, but that appellee of his own volition went into and upon the place where the marble stone was located and was making an examination for himself, or for some one other than appellant, and while making said examination the stone fell over or was accidentally pulled over and hurt appellee's feet, but that the falling of said stone was not caused by any act of negligence of appellant or any of its employés, but was purely an accident for which appellant was not liable; pleaded assumed risk; and alleged contributory negligence on the part of appellee in that, if the basement was in a darkened condition, and if the stone was carelessly placed against the wall as alleged, appellant knew of said conditions, or could have seen and known of same by the exercise of ordinary care.

The case was tried with a jury, and submitted upon the general issue. The jury returned a verdict in favor of appellee and assessed his damages at $6,000.

[1] Appellant was not entitled to an instructed verdict in its favor at the close of the evidence, as claimed under the first proposition.

The evidence, as we view it, does not show that appellee went to appellant's place of business and into the basement on his own accord or upon the business of his employer, for the transaction solely of his own or his employer's business, and not for the purpose of transacting any business for or with appellant. Mr. Heermans, the president of appellant corporation after testifying to the leak in the wall, said:

"At that time I informed the owner [Mr. Tooley] about the water coming through the wall of the building. * * * Between the day that the water or leak occurred on Sunday night and the time that Capt. Glick came down there I communicated with Mr. Tooley, requesting that some one come down there and see about the matter or attend to the matter. * * * I remember the occasion when Capt. Glick came down there. I knew that he was coming. A man working for me by the name of Vallon came to me and told me that Glick was on his way down to the office; that he had heard Mr. Tooley, Sr., tell Capt. Glick to come down there and see what damage had been done, and about the time he was telling me he said; 'There he is now just coming in the door.' So I stepped up to Capt. Glick, knowing what he had come for. * * * We went down stairs, and I showed him the partition wall where the water had come through. * * * I did not expect him [Tooley] to come down there personally and fix it, but expected him to send somebody else. I wanted it fixed. * * * It was for my benefit as well as Mr. Tooley that the matter be repaired. It was necessary for the carrying on of our business that it be fixed."

E. F. Glick, appellee, after testifying that he had been instructed to go down to appellant's place of business to see about the condition of the basement, etc., said:

"I went down to Mr. Heermans' place of business and walked into the office. * * * I saw Mr. Heermans on my arrival there and said: 'Mr. Heermans, I understand you people have some damage down here of some water. I came down here to see what the trouble was.' And he says: 'All right; come down, here and I will show you.' He led me into the basement and showed me where the water came through the wall."

Under the above and other similar evidence the court submitted to the jury that, if they found the facts to be as stated, the appellant would be under duty to use ordinary care for the safety of appellee.

In this we think there was no error. The evidence unmistakably shows that the appellee was an invitee in the basement of appellant's place of business, where the assigned negligent act occurred that caused the injuries to appellee complained of. Bustillos v. S. W. Cement Co. (Tex. Com. App.) 211 S. W. 929; Foster Lumber Co. v. Rodgers (Tex. Civ. App.) 184 S. W. 761, and authorities there used.

[2] We think it would be better practice in submitting cases to juries not to call their attention to allegations of separate and distinct assignments of negligence, though pleaded, and without further instruction thereon, but which the court does not submit to the jury for their findings, as complained of under the second and twenty-second propositions, as a reference to such separate assignments tends only to confusion. In this case the court in the charge, in stating the matters complained of, said to the jury that plaintiff charges that defendant was guilty of negligence in allowing the basement to remain poorly and insufficiently lighted during plaintiff's presence therein, and in failing to warn plaintiff of the danger in leaning the marble slab against the wall in an insecure position, and in failing to remove the slab from appellee's feet after it had fallen and injured him; the only act of negligence submitted being that appellant pulled the marble slab from its position against the wall, thus causing the slab to fall on appellee's feet, and causing the injuries complained of.

[3] The act of Heermans in pulling the marble slab from its position against the wall was not, in our opinion, under the evidence, an unavoidable accident, and the court was not in error in not submitting it as such. The word "accident" has been often and variously defined. In Waters-Pierce Oil Co. v. Snell, 47 Tex. Civ. App. 413, 106 S. W. 170, Judge Fly, of the San Antonio court, adopted the definition as given in Shear & R. Neg. 6, in which it is said:

"An accident is inevitable if the person by whom it occurs neither has nor is legally bound to have sufficient power to avoid it or prevent its injuring another."

Many definitions of the word are found in Words and Phrases, Second Series, vol. 1, p. 31. Without reviewing the above authorities at length, or the evidence in this case, it is clear that, because of the effort of Heermans to remove the marble slab from its reclining position against the wall by putting his hands upon the slab and intentionally pulling it with sufficient force to remove it from its position, thus causing it to fall, the falling of the slab under such circumstances would not be an unavoidable accident. We do not mean to say that Heermans intentionally caused the slab to fall, but that by putting his hands on the slab and pulling it he intended thereby to remove it from its position. The pulling of the slab evidently caused it to fall on Glick's feet and injure them, and such act was not in legal contemplation an unavoidable accident.

For a discussion and definition of the terms "unavoidable accident" and "inevitable accident," see Boyles v. McClure et al. (Tex. Com. App.) 243 S. W. 1080, and the references there used.

[4] The issues of contributory negligence and assumed risk, though each are pleaded, are not raised by the evidence. On the issue of contributory negligence all that can be said is that Glick was present, but did nothing. Waters-Pierce Oil Company v. Snell, 47 Tex. Civ. App. 413, 106 S. W. 170; Railway Co. v. Wood (Tex. Civ. App.) 63 S. W. 164. Contributory negligence implies misconduct, the doing of an imprudent act by the injured party, or his dereliction in

failing to take proper precaution for his personal safety. There is nothing in the evidence to suggest that Glick did any imprudent act or knew that the object leaning against the wall was a marble slab, or that Heermans was intending to remove it from its position, or the danger in his effort to do so.

[5, 6] One does not assume a danger of which he has no knowledge or means of knowledge. But, aside from the want of knowledge or danger, we think the doctrine of assumed risk does not apply in the absence of the relationship of employer and employé between appellant and appellee, since "assumed risk" is a term which the law imports into a contract of employment, express or implied, when nothing is said to the contrary, and in which the employé consents to assume or waive the dangers incident to his employment, of which he knows or of which he is charged with knowledge.

[7] The tenth proposition complains of a charge of the court to the effect that, if Glick entered upon premises of appellant with the consent of appellant for the purpose of determining the cause of the leak, or for the purpose of preventing damage to the premises or goods of appellant, appellant would be under legal duty to use ordinary care for the safety of appellee. The objection is that there is no evidence that Glick entered upon the premises to make repairs or prevent damage. The contention is not sustained by the record. In addition to what has already been stated from the evidence, Glick testified:

"Mr. Barglebaugh is the man that told me to go down there to see about where the leak was with a view of repairing it. * * * I went down there to see the amount of damage which had been done and what caused the damage. * * * I went down there for two purposes, at Mr. Barglebaugh's request, one to see about the leakage, where it occurred with the view of having it repaired so it would not occur any more, and to see if they did have any damage and report it to Mr. Barglebaugh."

However, we think the purpose of the presence of Glick on the premises is important to the extent only of determining whether he was a trespasser or an invitee.

[8] The court was not in error in refusing to give requested charges to the effect that, if Glick went upon the premises with the consent of appellant, on business of his own or that of any person other than appellant, appellant would owe Glick no duty other than not to willfully injure him. The cases we have already referred to do not sustain appellant's contention under this proposition. It is not appellee's contention, either in his pleading or evidence, that appellant willfully injured him, but it is his contention, and so submitted by the trial court, and, we think, sustained by the cases we have referred to, that if Glick was an invitee on the premises, appellant would owe to Glick the duty to exercise ordinary care not to injure him.

[9] Complaint is made that the verdict of $6,000 is excessive. Glick's attending physician had several X-rays made of his feet commencing within a few days after the injury and extending to the time of the trial of this case, and testified as to the injuries, and as to the condition of the feet as shown by the photographs. The physician testified that three toes of the right foot were badly broken, and on the left two bones were fractured. At the time of the trial, about one year after the injury, a loose piece of bone on one of his feet was "trying to work out" which the doctor said it might be necessary to cut out. The doctor said that Glick "will never be able to get around as well as he did prior to the existing injury; the arches seem to have fallen down since the injury." Glick was confined to his bed for about three months, with his feet in plaster casts. He testified to the pain suffered and still suffers; testified, as to the present condition of his feet, that the bones in the instep are broken; wears shoes 2½ sizes larger than he did before his injury; cannot stand on his feet as formerly; is not drawing as large salary as formerly; was 49 years old at the time of the trial; was receiving a salary of $200 per month at the time of the injury.

We cannot say that the verdict is excessive.

We have not discussed each proposition separately, but have carefully reviewed them, and those not discussed we have considered and overruled.

Finding no reversible error, the case is affirmed.