## TEXAS CO. v. FREER et al.

### No. 2262.

Court of Civil Appeals of Texas. Waco.

April 24, 1941.

Rehearing Denied June 12, 1941.

908

H. S. Garrett, of Fort Worth, John C. Jackson, of Houston, Forrester Hancock, of Waxahachie, and Black, Graves & Stayton, of Austin, for appellant.

Clark, Craik, Burns & Weddell and J. M. Stegall, all of Fort Worth, for appellees.

HALE, Justice.

J. R. Freer and wife, Mrs. Hazel Freer, for themselves and as next friend, instituted this suit against the Texas Company and J. H. Henderson for the recovery of damages on account of injuries resulting in the death of their daughter, Hazel Kathryn Freer, two years of age, and on account of serious personal injuries sustained by another daughter, Phyllis Freer, thirteen years of age.

Early in the morning of September 13, 1937, Mr. and Mrs. Freer, with their three children, were en route from Teague to Ft. Worth by automobile. Mrs. Freer was driving the car. The two children who were injured were riding in the front seat and Mr. Freer, with the other child, was in the rear seat asleep. Upon arriving at Ennis, Mrs. Freer drove into a filling station known as "Fire Chief Service Station," and requested the attendant, Henry Barkley, to drain some bad East Texas gasoline out of her car and to replace the same with good gas. While the attendant was draining the bad gasoline from the car, Mrs. Freer repaired to a coffee shop nearby and upon her return, after paying for the gas which she had purchased, she attempted to start the car, when it backfired and thereupon it became apparent that there was fire in or under the car. Mrs. Freer then got out of the car, and Phyllis, with Hazel Kathryn in her arms, while attempting to get out of the car, fell to the driveway and immediately the clothing of both children became ignited and they were engulfed with flames, which resulted in the injuries complained of.

It was alleged that J. H. Henderson was the owner of the ground and building where the accident happened. However, it appears from the evidence that H. W. Davis was the owner and that on May 25, 1933, he leased the premises to the Texas Company for a period of five years, and on December 16, 1936, the Texas Company subleased the premises to Glover & Barkley for a period of one year, to be used as a filling station. Upon the conclusion of the testimony, the court, without objection from any of the parties, peremptorily instructed the jury to return their verdict

in favor of J. H. Henderson and he went out of the case.

The jury found, in substance, that on December 16, 1936, the driveway, near the underground tanks of said filling station, contained a depression, which condition continued on to and including September 13, 1937, and the underground tanks were so situated that when cars stopped for service, the same would be immediately over the filler pipes opening into said tanks; that gasoline accumulated in the driveway of said station at a place where cars usually stopped for the purpose of being serviced with gasoline, and that the manner in which said underground tanks were constructed and maintained constituted negligence and a proximate cause of the injuries complained of; that on December 16, 1936, the driveway at said station was in such condition as to constitute a nuisance, and the Texas Company, its agents, servants or employees, knew and in the exercise of ordinary care should have known of the condition of such driveway, which was negligence and a proximate cause of the injuries complained of; that the Texas Company on and prior to September 13, 1937, held out to the public that it had the control of the station in question; that Mrs. Freer believed the Texas Company was in control of said station and that the same was constructed and operated in a safe manner when she drove into the same; and that Henry Barkley, who, on September 13, 1937, was an employee of the Texas Company, and who was not operating said station as an independent contractor, permitted gasoline to run out upon the driveway and collect in a pool under and about plaintiffs' car, which was negligence and a proximate cause of the injuries complained of. The jury further found the amount of the damages sustained; that the happening of the event in controversy was not the result of an unavoidable accident and that the same was not proximately caused or contributed to by any negligence on the part of Mrs. Freer.

The court rendered judgment on the verdict of the jury against the Texas Company and in favor of J. R. Freer and wife for the sum of $2,332.25, and in favor of Phyllis Freer for the sum of $2,000, and the Texas Company has duly perfected its appeal.

By numerous assignments, appellant asserts that the trial court should have granted its seasonable request for an instructed verdict, and should not have submitted various issues to the jury because they were not raised by the evidence. Its first contention is that the evidence was insufficient to show that it was responsible under the doctrine of respondeat superior for the negligence of Henry Barkley. Upon the trial it introduced in evidence the two lease contracts above referred to and it elicited verbal testimony from certain witnesses tending to show that the lease contract between itself and Glover & Barkley was the only agreement between the parties with reference to the operation of the station in question; that Henry Barkley, who spilled the bad gasoline which he was attempting to drain from appellees' automobile immediately prior to the time of the occurrence complained of, was in exclusive possession and control of the filling station, engaged in an independent business of his own, and that he did not sustain toward appellant the relationship of an employee.

In passing upon the asserted right to an instructed verdict, however, we must view the evidence and all reasonable inferences to be drawn therefrom in the most favorable light for the appellees. If there is any evidence in the record of probative force which would justify findings in favor of appellees on ultimate issues determinative of appellant's legal liability for the damages sought, then this court could not properly hold that the overruling of the request for a peremptory instruction was erroneous. Thomas v. Postal Telegraph-Cable Co., Tex.Com. App., 65 S.W.2d 282; American Gro. Co. v. Abraham, Tex.Civ.App., 94 S.W.2d 1231, and cases cited; City of Houston v. Chapman, 132 Tex. 443, 123 S.W.2d 652.

The written lease agreement between H. W. Davis and the Texas Company provided that lessor should maintain the premises in good repair during the term of the lease, but that if he failed to do so, lessee may, at its election, make the necessary repairs at the expense of lessor; that lessee should pay to lessor as rental for the premises "a sum equal to one cent for each gallon of lessee's gasoline sold from said premises each month during the term hereof, payable monthly"; that "should lessee for any reason be prevented from establishing or continuing the business of distributing petroleum products on said premises, or should said business for any

reason in lessee's judgment become unduly burdensome, lessee may terminate this lease"; that lessee should have the right to sever and remove all fixtures, equipment and other property placed on said premises by lessee during the term of this "or any previous lease." This lease was in full force and effect on September 13, 1937, when the injuries complained of were sustained.

The lease agreement dated December 16, 1936, between appellant as lessor and Glover & Barkley as lessee provided that lessee should maintain the premises in good repair during the term of the lease, but that upon failure to do so, the lessor may make the necessary repairs for the account of lessee; that lessee should pay to lessor as rental for the premises and equipment therein described the sum of $40 per month; that the lease is subject to the terms and conditions of the prior lease between lessor and the owner of the demised premises, and that the same should automatically terminate upon the termination of said lease between lessor and the owner of the demised premises; that upon the expiration of the agreement or the termination thereof, lessee should yield up and return to lessor the said premises, and all the buildings, improvements, fixtures, tools, equipment and facilities so received by lessee.

The evidence indicates that there was another written agreement between appellant as seller and Glover & Barkley as purchaser with reference to the sale of products at the station in question, but this contract was not introduced in evidence, nor is there any showing as to why it was not offered. There was parol evidence that such contract provided, among other things, that "purchaser shall not sell products purchased from others under the trade-mark or trade name of the seller."

Glover and Barkley each testified without dispute that all of their dealings with appellant had been carried on through a Mr. Thompson, who was in charge of appellant's bulk station at Ennis as its agent. There was evidence that Mr. Thompson would come to the station sometimes every day and sometimes every other day; that he gave instructions to the attendants about keeping the station clean; that he gave instructions as to the price for which the products of appellant were to be sold; that appellant sent circulars to the attendants from time to time giving instructions as to how to keep the restroom, how to meet the public and how to conduct the station; that no petroleum products were sold from said station except those of appellant and that the attendants could not change the price for which such products were to be sold without appellant's consent; that gas was sold from the station on what was known as courtesy cards issued by appellant; that Barkley leased the station from appellant and was selling gasoline "on a commission" and "got so much money according to the amount of gas sold"; that appellant owned the gasoline pumps, underground tanks and equipment at the station and made repairs on the same from time to time; that it maintained its trade-mark signs on said station and on the highway leading to the same and neither the name of Glover or Barkley appeared on or about the premises.

■ The Supreme Court of this state announced the rule in the early case of Taylor, B. & H. Ry. v. Warner, 88 Tex. 642, 32 S.W. 868, 870, that "every person who is found performing the work of another is presumed to be in the employment of the person whose work is being done, and if the facts be such as to exempt the owner of the property improved, or the person for whom the work is being performed, from liability for the acts of those performing such work, it devolves upon him who claims such exemption to make proof of the terms of the contract, showing that the relation of master and servant did not exist." That the jury was justified, under the evidence in this case, in finding that Henry Barkley was performing the work of appellant at the time of the infliction of the injuries complained of, we have no doubt. If the terms of the contract between appellant as seller and Glover & Barkley as purchaser were such as to exempt appellant from liability for the negligent conduct of Barkley in the particulars found by the jury, then it devolved upon appellant to make proof of the terms of such contract, or to show by competent evidence that the relation of master and servant did not exist between it and Barkley. In our opinion the lease contract between appellant as lessor and Glover & Barkley as lessee, when considered in connection with the other evidence in the case, was insufficient to warrant us in holding, as a matter of law, that the relationship between appellant and Barkley was conclusively shown to be that of em-

ployer and independent contractor rather than that of master and servant within the meaning of the doctrine of respondeat superior. Ochoa v. Winerich Motor Sales Co., 127 Tex. 542, 94 S.W.2d 416; Baray v. Escobedo, Tex.Civ.App., 259 S.W. 1099; Gulf, C. & S. F. Ry. Co. v. Clement, Tex. Civ.App., 220 S.W. 407, affirmed Tex.Com. App., 236 S.W. 714; Maryland Casualty Co. v. Kent, Tex.Civ.App., 271 S.W. 929; Id., Tex.Com.App., 3 S.W.2d 414; Kampmann v. Rothwell, Tex.Civ.App., 107 S.W. 120; Schroeder v. Rainboldt, 128 Tex. 269, 97 S.W.2d 679; Buckley v. Gulf Refining Co., Tex.Civ.App., 123 S.W.2d 970; Broaddus v. Long, Tex.Civ.App., 125 S.W. 2d 340, affirmed 135 Tex. 353, 138 S.W.2d 1057; Gibson v. Gillette Motor Transport, Tex.Civ.App., 138 S.W.2d 293, error refused.

The trial court instructed the jury that the term "employee" means any person in the service of another under a contract of hire, whether express or implied, oral or written, where the other retains the right to prescribe the means and methods of performing the labor and to control the material details of same. The term "independent contractor" was defined to mean any person who, in the pursuit of an independent business, undertakes to do a specific piece of work for another person, using his own means and methods without submitting himself to their control in respect to all its details, rendering service in the course of an independent occupation, representing the will of his employer only as to the result of the work and not as to the means and methods by which it is accomplished. In view of the great number of adjudicated cases on the subject, we do not believe it would serve any useful purpose for us to discuss at length the rules and tests for determining whether one who performs service for another is an independent contractor or a servant. In this case appellant had the unquestioned right at any time it saw fit to terminate its lease contract with H. W. Davis and thereby automatically terminate its lease contract with Barkley. Presumably the termination of the lease contract between appellant and Barkley would also be a ground for terminating the agreement between appellant as seller and Barkley as purchaser. Without further discussion, we hold that the evidence in the case was sufficient to tender fact issues as to whether appellant retained the right to prescribe the means and methods by which Barkley was to perform the work which he was performing, and to control the material details of the same, at the time when the injuries complained of were inflicted. Maryland Casualty Co. v. Scruggs, Tex.Civ.App., 277 S. W. 768; Gulf Refining Co. v. Rogers, Tex. Civ.App., 57 S.W.2d 183; Blankenship v. Royal Indemnity Co., 128 Tex. 26, 95 S.W. 2d 366.

Appellant further contends that the evidence was insufficient to raise issues of fact as to the actionable negligence of Henry Barkley in permitting gasoline to run out upon the driveway and collect in a pool under and about appellees' car at the time and place in question. Mrs. Freer testified that she cautioned Barkley not to spill any of the bad gas while draining the same from the tank of her car. Barkley testified that he knew of the sunken place or depression in the driveway; that he did spill some of the gasoline while in the process of draining it from the car into a bucket; that after draining the gasoline from the tank, he turned a water hose on the exhaust pipe in order to clear it of the spilled gas. There was evidence that gas is highly volatile and is a dangerous substance, giving off vapors that will ignite several feet from the liquid itself; that on the occasion in controversy there was no flame on the left side of the car until after the children had fallen into the puddle which had collected near that side of the car; that immediately after the children fell into the puddle, there was a flash of flame coming up from the same.

The trial court defined negligence, ordinary care, proximate cause and new and independent cause for the jury. No complaint is here presented with respect to the definition of these legal terms as given. In fact, the court gave to the jury additional special charges prepared and requested by appellant which presented its theory of the law and facts on this phase of the case in the most favorable light. While it is well settled that anticipation of consequences is a necessary element in determining actionable negligence, we cannot say, under all the evidence in this case, that Barkley, in the exercise of ordinary care, could not reasonably have foreseen that injurious consequences might result directly from his conduct in permitting the gasoline which he was handling to spill upon the driveway and collect in a pool near appellees' car. Wa-

ters-Pierce Oil Co. v. Snell, 47 Tex.Civ. App. 413, 106 S.W. 170; East Texas Oil & Refining Co. v. Mabee Consolidated Corp., Tex.Civ.App., 103 S.W.2d 795.

If we are correct in the views which we have heretofore expressed, then the sufficiency or not of the evidence to support the findings of the jury on the other independent grounds of recovery submitted in the case become immaterial. However, we have carefully considered the additional assignments and we are of the opinion that the evidence, which is entirely too voluminous to here set forth even in substance, was sufficient to sustain the findings of the jury with reference to the defective condition of the driveway at said filling station on the dates found, and that such findings constitute a proper basis in law for imposing liability upon appellant for the damages complained of, even though it should be held that appellant is not responsible for the negligence of Barkley as its employee.

The general rule as to the liability of a landlord to third parties for injuries resulting from a defective condition in the leased premises is well stated in 36 C.J., p. 241, par. 949(b) in the following language: "Where premises are rented in a bad state of repair, the landlord is liable to third persons for injuries resulting therefrom, and will be liable to a stranger for injuries sustained by him, by reason of the defective condition of premises in the possession of a tenant, where at the time of the letting, there existed a nuisance on such premises by reason of the defective or dangerous construction of a building thereon, or of parts used as appurtenances thereto." In the case of Perez v. Raybaud, 76 Tex. 105, 13 S.W. 177, 178, 7 L.R.A. 620, the Supreme Court has said: "The authorities are abundant sustaining the doctrine that the owner cannot create a nuisance on his premises, and relieve himself of liability to a third person injured thereby, by leasing. It is also the law that he would be liable to a stranger where the defective structure causing the injury is on the premises when they are leased." See also, Paternostro v. Bradley, Tex.Civ. App., 262 S.W. 896.

While appellant made no covenant in either of the lease contracts in evidence to maintain the premises in repair, yet it did reserve the right in both leases to make necessary repairs at the expense of the other contracting parties. The evidence shows without dispute that appellant did exercise its reserved right to make repairs on the driveway and the filler pipes opening into the driveway after it had subleased the premises on December 16, 1936, and there is no showing that it ever called upon either of the other contracting parties to make such repairs or to reimburse it for the expense of the same. Having thus elected to exercise a contract right for its own interest, we see no reason why it should not be held responsible for a negligent discharge of the duty thereby voluntarily assumed.

Appellant challenges the right of the trial court to render judgment against it in the absence of any specific finding by the jury that the condition of the driveway was such, on December 16, 1936, that same could not, by the exercise of ordinary care, have been safely used for the purpose for which the station was leased without unreasonable risk of injury to customers, or that appellant was in actual possession and control of the station on September 13, 1937, or that Mrs. Freer was induced by any act or representation by it to believe that it was operating the station, or that Barkley was acting in the course of his employment at the time when the injuries complained of were sustained. Appellant denominates these issuable facts as "vital and indispensable elements" to any right of recovery against it. The record does not indicate that any such specific issues were submitted to the jury, or that any request was made for their submission, or that any objection was made to the court's charge because they were not submitted.

It appears that the trial court submitted issues in this case covering two or more separate and independent grounds of recovery on behalf of appellees. We think in the submission of each of the two grounds of recovery discussed herein, the court, under the record before us, sufficiently submitted the issues covering the essential and controlling facts of such grounds. It may be conceded, without being decided, that one or more of the component elements of each ground of recovery thus submitted, was omitted from the charge, but if so, in the absence of any request for the submission of such component element, or elements, if any, the trial court was authorized to find the unsubmitted element, or elements, in such

way as to support the judgment rendered. Wichita Falls & Oklahoma Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79.

We have carefully considered all of the appellant's assignments, but we find no reversible error in the case and therefore the judgment of the trial court is affirmed.